IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> SMITHFIELD FOODS, INC. and SMITHFIELD FRESH MEATS SALES CORPORATION, <br><br> Defendants. | CIVIL ACTION NO. 1:24-CV-02158-TRJ-CMS <br><br> JURY TRIAL DEMAND |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants Smithfield Foods, Inc. (Smithfield Foods) and Smithfield Fresh Meats Sales Corporation (Smithfield Fresh Meats Sales) (collectively, Defendants or Smithfield) submit this Brief in Support of their Motion for Summary Judgment.

## I.   INTRODUCTION

Smithfield, like many companies, unfortunately had to cut costs as a result of the COVID-19 pandemic and had to engage in a reduction in force (RIF) in January 2021. Sheryl Hahn (Hahn) was terminated in that RIF. The evidence conclusively demonstrates Hahn's age played absolutely no role in the decision to terminate her employment. Critically, Hahn admits: (1) no one at Smithfield said or did anything discriminatory based on her age; (2) she cannot identify any individual at Smithfield

1

who discriminated against her; (3) she does not even know who else was included (or not included) in the RIF, or why they were included (or not included); (4) she never reported any alleged discrimination to Smithfield; (5) and the only reason she believes she was discriminated against is because she (incorrectly) thinks she was the oldest person included in the RIF.

First, Hahn was selected for inclusion in the RIF, in part, because of her high salary. Smithfield's inside sales team (and other divisions not relevant to this lawsuit) were told in late 2020 that they had to reduce costs by approximately 10 percent. The undisputed evidence establishes that Hahn's salary was remarkably high, approximately $30,000 higher than the next highest-paid Senior Sales Account Manager on her team. At the time her employment was terminated, Hahn's salary was even higher than her current and former direct supervisors. One reason Hahn's indirect supervisor, Scott Trapp (Trapp), who was 50 years old at the time of Hahn's termination, selected her for termination was because of her high salary. Robert Darrell, VP, Fresh Sales, (Darrell), who approved Trapp's RIF selections, was 60 years old at the time of Hahn's termination. Hahn was 59 years old.

Second, another reason Hahn was selected for inclusion in the RIF was her location. In April 2019, Smithfield made the business decision that it wanted members of its inside sales team to work at a Smithfield corporate office to increase collaboration and teamwork. At that time, Smithfield told Hahn that her position,

2

like the positions of more than one hundred other employees, was being relocated to Smithfield, Virgina, and that she would be terminated if she did not relocate. Despite months of back and forth, Hahn never relocated. The undisputed evidence establishes that in January 2021, Hahn worked remotely from her home in Canton, Georgia, which factored into the decision to include her in the RIF.

Ultimately, Hahn and the Equal Employment Opportunity Commission (EEOC) may think the reasons for her termination are unfair, but that does not make them illegal. The EEOC cannot establish a *prima facie* claim under the Age Discrimination in Employment Act (ADEA) because: (1) Hahn was not qualified for her current position or to assume another position at the time of her discharge, and (2) there is no evidence by which a fact finder could reasonably conclude that Defendants intended to discriminate because of Hahn's age. Hahn's position was eliminated entirely as part of the companywide RIF, she was not replaced, and Hahn never applied for any available positions with Defendants. As there are no genuine disputes as to any material fact and Plaintiff's claims are deficient as a matter of law, Defendants are entitled to summary judgment.

## II.    STATEMENT OF FACTS

### A.    Hahn's Employment History with Smithfield Fresh Meats Sales

In August 2010, Hahn began working as a member of Defendants' inside sales team. Statement of Material Facts (SMF) ¶ 1; Ex. A, pp. 17, 18, 68. Hahn's initial

3

annual salary was $125,000. SMF ¶ 2. Inside sales personnel made sales through phone calls or emails to customers, and traveled very little to meet with customers in-person, in contrast to "outside" sales personnel who worked in conjunction with the inside sales team to visit stores and meet with customers in the field. SMF ¶ 3.

From around April 2019 through January 2021, Hahn was a Senior Sales Account Manager for Smithfield Fresh Meats Sales Corporation. SMF ¶ 4. Senior Sales Account Managers are responsible for supporting their assigned Regional Sales Manager, Sales Director, or National Accounts Manager, establishing and maintaining relationships with assigned key customers, introducing and placing new products with customers, executing organizational initiatives, and driving sales of key items with strategic customers for long-term growth. Ex. B, SMI_4275. This position was one in a series of four progressive sales roles within Smithfield Fresh Meats Sales: Sales Representative, Sales Account Manager, Senior Sales Account Manager, and Regional Sales Account Manager. SMF ¶ 5; Ex. C, p. 23. As an employee progresses through these positions they receive greater leadership opportunities, work with more demanding and/or more profitable clients, and their compensation range increases. SMF ¶¶ 5-8; Ex. D, pp. 249-52.

### B.    Defendants' 2019 Relocation Project

In early 2019, Defendants began a relocation initiative that involved transferring inside sales personnel as well as other corporate employees to

Defendants' headquarters in Smithfield, Virginia. SMF ¶ 9.[1] Outside sales personnel were not required to relocate because they traveled more frequently than inside sales personnel and benefited from being in close geographic proximity to their customers. Ex. D, pp. 67, 291; Ex. F, pp. 21, 22, 95-97.

In April 2019, Defendants told Hahn that her position was being transferred to Smithfield, Virginia, and that she was expected to relocate before the end of the calendar year. SMF ¶ 10; Ex. A, Smi. Ex. 3. If she did not relocate or apply for a different position internally, she would be terminated. Ex. G, EEOC Ex. 10, Smi. Ex. 12 at SMI_4198. At this time, Hahn reported directly to Paul Kennis (Kennis), Regional Sales Manager, and indirectly to Trapp, Vice President, Corporate & Industrial Sales (also referred to internally as a VP, Fresh Sales). Ex. D, p. 100, EEOC Ex. 2 at SMI_748; Ex. E, pp. 121, 122.

For about six months, Hahn engaged in a back and forth with members of Defendants' Human Resources team, in particular Morgan Moore, then-Director, Compensation & HRIS, (Moore), and Trapp, regarding whether she would relocate. *See* Ex. G, pp. 151-97, Smi. Exs. 5-23, EEOC Ex. 5. Hahn repeatedly provided contradictory information regarding her decision to relocate. *See* Ex. A, Smi. Exs. 4, 6, 7; Ex. G, EEOC Ex. 5, Smi. Exs. 6, 11, 14-17. Nonetheless, Defendants engaged

---

[1] Inside sales personnel were also allowed to work from Smithfield's other corporate offices in Kansas City, Missouri, and Vernon, California. Ex. D, pp. 67, 70-71, 115; Ex. E, pp. 56-57.

in extensive efforts to facilitate Hahn's relocation to Smithfield, and wanted her to remain an employee. Ex. D, pp. 125-26, 262-63; Ex. E, EEOC Ex. 4; Ex. G, Smi. Exs. 10, 17, 23; Ex. H. Moore also repeatedly made Hahn aware of her ability to apply for other positions at Smithfield that did not require relocation. Ex. G, EEOC Ex. 10, Smi. Ex. 10; Ex. I, pp. 63-64.

Ultimately, Hahn did not relocate. SMF ¶ 11. After six months of negotiating with Hahn regarding relocation, Hahn's relocation requirement was temporarily "tabled" in or around late 2019. Ex. A, pp. 41, 42; Ex. D, pp. 95, 96. Hahn continued working remotely from her home in Canton, Georgia. SMF ¶ 11; Ex. A, p. 57.[2]

### C.    Defendants' January 2021 RIF and Hahn's Termination

Defendants were significantly impacted by the COVID-19 global pandemic, and implemented a companywide RIF to reduce division expenditures by approximately 10% in January 2021 (the January 2021 RIF). SMF ¶ 12.

The Fresh Sales team, which consisted of inside and outside sales personnel responsible for selling fresh pork who reported up through Trapp and Darrell, was included in the January 2021 RIF. SMF ¶ 13; Ex. F, pp. 33-34. Trapp was tasked with recommending employees from his reporting line for inclusion in the RIF, with

---

[2] At the end of 2019, Kennis and his two other direct reports, Al Thomas (Thomas) and Susan Carr-Dow, Regional Sales Manager, (Dow), all worked in Smithfield's corporate headquarters, with Dow having relocated to Smithfield, Virginia. Ex. E, pp. 30, 44, 58, 126; Ex. J, pp. 14-15; Ex. K, pp. 2311-13; Ex. L.

final approval from Darrell. Ex. D, pp. 35-38, 207; Ex. F, pp. 27-29, 99. When deciding which employees should be included, Trapp considered factors such as employee performance, location, and salary. SMF ¶ 15. Trapp applied this same criteria to everyone he considered for inclusion in the RIF. *Id.*; *see* Ex. D, pp. 268-80. At the time of the January 2021 RIF, Trapp was 50 years old, Darrell was 60, and Hahn was 59. Ex. D, p. 12; Ex. F, pp. 9-10; Ex. A, p. 26.

Trapp selected Hahn for inclusion in the January 2021 RIF based on her salary and location. SMF ¶¶ 15, 17. Hahn was the highest paid Senior Sales Account Manager on the Fresh Sales team at the time and was still working remotely from her home in Canton, Georgia. SMF ¶¶ 11, 18; Ex. B, SMI_4267-68; Ex. D, pp. 285-88, Smi. Ex. 1, pp. 1, 2. Hahn's annual base salary was $142,947, approximately $30,000 higher than the next highest-paid Senior Sales Account Manager on her team. Ex. B, SMI_4267-68; Ex. D, pp. 285-88, Smi. Ex. 1, pp. 1, 2. The rest of the Senior Sales Account Managers on the Fresh Sales team had annual salaries of less than $100,000. *Id.* At the time, Hahn's salary was even higher than several Regional Sales Managers and Senior Regional Sales Managers, including Dow (Regional Sales Manager), and Kennis (Senior Regional Sales Manager), her current and former direct supervisors respectively. *Id.*; Ex. D, pp. 288-89.

Hahn's employment was terminated effective January 29, 2021. SMF ¶ 19. In conjunction with the termination of her employment, Hahn received an Older

7

Worker Benefits Protection Act (OWBPA) notice that included the titles and ages of the individuals who were included in the January 2021 RIF, and those who were considered for inclusion in the RIF but not selected. *See* SMF ¶ 20. Prior to her termination, Hahn never reported any complaints of discrimination to Smithfield, and admits she was never subjected to any discriminatory comments or acts based on her age. SMF ¶¶ 25, 26.

### D.   Hahn's Position Was Not Backfilled After the January 2021 RIF.

Hahn's position was eliminated as part of the January 2021 RIF. SMF ¶ 30. In January 2021, Dow had two direct reports (Hahn and Thomas) and Defendants were working to fill a third position that was left vacant when Dow was promoted from Senior Sales Account Manager to Regional Sales Manager in or around August 2020. Ex. M; Ex. I, Smi. Ex. 1. Following Hahn's termination, there were only two positions reporting to Dow (Thomas and a Sales Representative). Ex. D, pp. 181-82. The position left vacant following Dow's promotion was ultimately reclassified as a Sales Representative position and filled by Rachel Romick (Romick) on March 15, 2021. *See* SMF ¶ 30; Ex. I, Smi. Ex. 1; Ex. M; Ex. N. "Sales Representative" is an entry-level sales position with fewer responsibilities, fewer and/or less profitable customers, and lower compensation than Sales Account Managers, Senior Sales Account Managers, and Regional Sales Managers. SMF ¶¶ 5-7. It is two levels below Hahn's Senior Sales Account Manager position. The Sales Representative position

filled by Romick was located in Smithfield, Virginia, and her starting salary was $50,000. Ex. I, Smi. Ex. 1; Ex. N.

Dow did not receive a third direct report until April 19, 2021, with the hire of a Business Management & Sales Coordinator, Susan Jones (Jones). *See* Ex. I, Smi. Ex. 1; Ex. N. Jones was not a replacement for Hahn, as she did not hold a sales position. Ex. I, Smi. Ex. 1; Ex. J, pp. 56. Instead, Jones filled a newly created role responsible for analyzing customer orders and scheduling product that was separate and distinct from the Sales Representative through Regional Sales Account Manager progression. Ex. J, pp. 56, 73, 74.

## III.   ARGUMENT AND CITATIONS TO AUTHORITIES

### A.   Plaintiff Cannot Establish A *Prima Facie* Case Of Age Discrimination.

Plaintiff may prove its claim under the ADEA through either direct evidence or circumstantial evidence.[3] *See Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1270 (11th Cir. 2014) (citing *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010)). If, as here, a plaintiff proffers circumstantial evidence to establish an ADEA claim, courts apply the burden-shifting framework established

---

[3] "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, constitute direct evidence of discrimination. One example of direct evidence would be a management memorandum saying, 'Fire [Plaintiff] – he is too old.'" *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (citations omitted). Here, Plaintiff only relies on circumstantial evidence.

in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Sims v. MVM, Inc.*, 704 F.3d 1327, 1332–33 (11th Cir. 2013). Thus, Plaintiff must first establish a *prima facie* case of age discrimination. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000).

In a RIF, Plaintiff must establish a *prima facie* case of age discrimination by showing: (1) that Hahn was in a protected age group and was adversely affected by an employment decision, (2) that Hahn was qualified for her current position or to assume another position at the time of discharge, and (3) there is evidence by which a fact finder could reasonably conclude that Defendants intended to discriminate on the basis of age in reaching that decision. *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344 (11th Cir. 2003) (citing *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531–32 (11th Cir. 1996)). The plaintiff's burden in a RIF case has been characterized as more demanding than the showing required in a garden-variety discharge case. *See, e.g.*, *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 567 (11th Cir. 1992) (a plaintiff in ADEA case "must establish his prima facie case by showing something more than he would otherwise have to show if he were replaced by an employee outside the protected class.")

If Plaintiff establishes a *prima facie* case of age discrimination, the burden of production shifts to Defendants "to articulate a legitimate, nondiscriminatory reason for the challenged employment action." *Chapman*, 229 F.3d at 1024. If Defendants

10

articulate at least one such reason, Plaintiff then must show that Defendants' stated reason is merely a pretext for discrimination. *See id.* The burden of persuading the trier of fact that Defendants intentionally discriminated against Hahn remains at all times with Plaintiff. *See Earley*, 907 F.2d at 1081 (citation omitted). Accordingly, Plaintiff must show that age discrimination was the "but-for" cause of the adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).

**1.    The EEOC cannot prove that Hahn was qualified to assume an available position at the time of her discharge**.

In the Eleventh Circuit an employee is qualified to assume an available position at the time of discharge during a RIF if they: (1) possess the requisite skills, experience, and qualifications to perform the essential functions of the position without additional training, and (2) apply for an available position as opposed to expressing general interest in continued employment. *See, e.g., Johnson v. Unified Gov't of Athens-Clarke Cnty.*, 209 F. Supp. 3d 1335, 1343 (M.D. Ga. 2016); *J. Smith Lanier & Co.*, 352 F.3d at 1345–46.

**a.    The EEOC cannot prove that there was a position available for which Hahn was qualified at the time of her discharge.**

When an employee's position is entirely eliminated, she "must show that [s]he was qualified for another *available* job with that employer." *Earley*, 907 F.2d at 1082-83 (emphasis added). Hahn's position was eliminated entirely and she was never replaced. SMF ¶ 30. Dow went from three direct reports prior to the January

2021 RIF (Hahn, Thomas, and an open position) to two direct reports after (Thomas and an open Sales Representative position filled by Romick). *See* Ex. D, pp. 181-83, EEOC Ex. 21, SMI_2456. Defendants hired other employees on Dow's team in the months following Hahn's departure. Ex. I, Smi. Ex. 1. However, these individuals were hired to (1) backfill Thomas' role following his transfer, and (2) fill a new Business Management & Sales Coordinator role that did not involve interacting with customers and was analytical in nature. *See* Ex. J, pp. 28, 29, 54-56, 73, 74.

Thus, the EEOC must prove that Hahn was qualified for another job with Smithfield that was available at the time of her discharge. *See Earley,* 907 F.2d at 1082-83 (this prong is only met if the plaintiff was qualified for a position that was available *at the time of* her termination, not if an available position exists only "well before the time of plaintiffs' termination or several months after their termination."). Further, Hahn's qualification for her eliminated position is not enough. *Id.* at 1083. "If plaintiffs need prove only that they were qualified for some available position at any earlier or later time, virtually every plaintiff would be able to meet this requirement of a *prima facie* case." *Id*. at 1083 n.4.

At the time of Hahn's termination, there were no more than three sales-related positions available within Smithfield Fresh Meats Sales: a Sales Representative position (located in Smithfield, Virginia ultimately filled by Romick); Director

12

Casing Sales (located in Smithfield, Virginia); and a Sales Account Manager-Fresh Sales position (located in Vernon, California). SMF ¶ 27; Ex. I, Smi. Ex. 1.[4]

The EEOC has made no attempt to establish that Hahn was qualified for any of these three positions. To be qualified for an available position, courts consider whether the individual previously worked in the field or had the necessary skills for the position without needing additional training. *See Alexander v. Vesta Ins. Grp., Inc.*, 147 F. Supp. 2d 1223, 1239 (N.D. Ala. 2001); *Johnson,* 209 F. Supp. 3d at 1343 (no discriminatory intent in not rehiring employee who had no experience, knowledge, or skills working with software for a software position). Merely being capable of being trained to assume an available position is insufficient. *See Alexander*, 147 F. Supp. 2d at 1239. The EEOC cannot establish what the requirements for the Director Casing Sales position were, or whether Hahn could have performed the role without any additional training.

The remaining available positions were located in Smithfield, Virginia and Vernon, California. Ex. I, Smi. Ex. 1. There is simply no evidence in the record that Hahn could have met the location requirements for these positions. At all times

---

[4] The Director Casing Sales position was posted on September 5, 2020 and withdrawn sometime thereafter, while the Sales Account Manager-Fresh Sales position was posted on January 8, 2021 and withdrawn sometime thereafter. Ex. I, Smi. Ex. 1. Defendants do not have a precise date for when these postings were cancelled. The precise date is immaterial and does not undermine Defendants' argument.

during her employment with Smithfield, Hahn worked remotely from her home in Georgia, and when Smithfield previously attempted to relocate Hahn to the company's Virginia headquarters, she engaged in extensive delay tactics for six months. *See* Section II(B).

### b. Hahn failed to apply for any available positions.

The ADEA requires only that a discharged employee "who *applies* for a job for which she is qualified and which is available at the time of her termination must be considered for that job along with all other candidates, and cannot be denied the position based upon her age." *J. Smith Lanier & Co.*, 352 F.3d at 1344–45 (emphasis added) (citations omitted). A general interest in being rehired without submitting an application is not enough to establish a *prima facie* case of age discrimination. *Id*. at 1345. To prove that Hahn was not hired for an open position at the time of her termination, Hahn had to actually apply for another job, which she undisputedly did not do. *See id*.

Here, Defendants post available job positions on internal and external job boards. Ex. G, pp. 125-26, 161-62; *e.g.*, Ex. O. Hahn was aware of the different avenues through which she could apply for available positions. Ex. G, Smi. Exs. 10, 12, p. SMI_4198, EEOC Ex. 10. Importantly, and fatal to the EEOC's claim, Hahn admitted that she did not apply for *any* other position with Smithfield after receiving notice of her termination. SMF ¶ 28. In the months following her termination,

14

although several additional positions became available on the Fresh Sales team (none of which were a replacement for Hahn), Hahn never applied for these positions. SMF ¶ 28; Ex. I, Smi. Ex. 1. When asked why she did not apply, Hahn said: "I don't know." Ex. A, p. 35. Thus, Plaintiff cannot show that Hahn was qualified for another job that was available with Defendants at the time of her termination. Summary judgment is warranted on this basis alone. *See Earley*, 907 F.2d at 1083.

### c. Defendants were not required to establish an interdepartmental transfer program.

Although Hahn did not apply for any positions within Smithfield and therefore cannot establish that she was qualified for an available position, Defendants expect that the EEOC will attempt to claim that Hahn should have been transferred to an available outside sales position in Vernon, California that a Senior Sales Account Manager, Henry Dalbec, Jr. (Dalbec), ultimately received.

However, contrary to the EEOC's claims, "federal anti-discrimination law does not impose an obligation on an employer undergoing a reduction in force to transfer its employees to other departments as a matter of course." *Alexander*, 147 F. Supp. 2d at 1239. There is no discrimination where an employer transfers a better qualified employee, not plaintiff, to a vacant position. *See Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596-97 (11th Cir. 1987).

15

Dalbec, who was on the inside sales team, was slated to be terminated on February 19, 2021.[5] Ex. D, p. 178, EEOC Ex. 22, SMI_2526. However, prior to his termination date and after the January 2021 RIF, an outside salesperson resigned from their position in California, creating an open outside sales position. *Id.*, pp. 178, 291-94. Dalbec was considered for the position because he had previously worked as an outside sales representative. *Id.*, p. 178.

Plaintiff cannot dispute that Dalbec was better qualified for the outside sales position than Hahn. Indeed, the evidence establishes that Hahn had never even worked an outside sales position at Smithfield. SMF ¶ 1. Moreover, the ADEA "does not … impose any added burden on employers to transfer or rehire laid-off workers in the protected age group as a matter of course." *J. Smith Lanier & Co.*, 352 F.3d at 1344 (citations omitted). Thus, even if the position had been available at the time of Hahn's termination, Smithfield was under no obligation to consider Hahn for an outside sales position in California for which she had not applied.

---

[5] Dalbec was temporarily retained beyond the January 2021 RIF to assist with two case-ready launches for an important client, which involved travel to client locations along the East Coast. Ex. D, pp. 292-93.

**2.    Plaintiff has no evidence by which a fact finder might reasonably conclude that Smithfield intended to discriminate based on Hahn's age in selecting her for the RIF.**

To satisfy the last prong, Plaintiff must produce evidence that Smithfield did not treat Hahn neutrally[6] with respect to her age, but, instead, discriminated based upon it. *Mitchell v. City of LaFayette*, 504 F. App'x 867, 870 (11th Cir. 2013) (citing *Rowell v. BellSouth Corp.*, 433 F.3d 794, 798 (11th Cir. 2005)). Plaintiff's unsupported, conclusory allegations are insufficient to avoid summary judgment. *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987)).

First, Plaintiff claims Hahn was discriminated against because when she reviewed the severance package, "there was a list of people that were being terminated. [Plaintiff] was the oldest person on that list." SMF ¶ 22. This is objectively untrue, as two terminated employees were older than Hahn. Ex. A, Smi. Ex. 5, SMI_1126; Ex. D, EEOC Ex. 25, pp. 10-12.

Second, the EEOC appears to argue that because younger employees were kept, Hahn was discriminated against. The Eleventh Circuit, however, has held that

---

[6] As discussed at greater length *infra*, (1) Hahn never reported any concerns regarding discrimination based on her age while she was employed by Smithfield (SMF ¶ 26); (2) Hahn admits that no one made any discriminatory comments towards her based on her age while she was employed by Smithfield (SMF ¶ 25); and (3) Hahn could not identify any particular individual at Smithfield that she believed had discriminated against her. SMF ¶ 24.

the fact younger workers were retained does not support an inference of discriminatory intent "in light of the fact that [Smithfield] also retained other employees who were well over the age of 40 in those departments…." *City of LaFayette*, 504 F. App'x at 871.[7] The mere fact of Hahn's age does not support an inference of discrimination by the decision-makers. *See Myers v. Glynn-Brunswick Mem. Hosp.*, 683 F. Supp. 1387, 1391 n.3 (S.D. Ga. 1988) (inferring discrimination based on membership in protected class and an adverse action only would be based on speculation and conjecture, and "an inference based on speculation and conjecture is not reasonable and may not be made by the Court" on summary judgment).

Further, the fact that Trapp and Darrell were within the same protected age group as Hahn indicates that age was not a factor in Hahn's termination. *See* Ex. D, p. 12; Ex. F, pp. 9-10; *see Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991) (finding that a plaintiff faces a difficult burden when the primary players behind a termination are within the class of persons protected by the ADEA because they "are more likely to be the victims of age discrimination than its perpetrators"); *Smith v. Wynfield Dev. Co.*, 451 F. Supp. 2d 1327, 1347 (N.D. Ga. 2006); *Waldemar v. Am. Cancer Soc.*, 971 F. Supp. 547, 556 (N.D. Ga. 1996).

---

[7] Smithfield retained six employees at least 50 years old, two of whom were 58 years old, a year younger than Hahn. Ex. A, Smi. Ex. 5, SMI_1126; Ex. D, EEOC Ex. 25, pp. 10-12.

18

Trapp, Darrell, and Moore all testified that Hahn was selected because of her location and/or level of compensation (SMF ¶ 17) and the record is bereft of any indication that those reasons are false or pretextual. The evidence further establishes that the workforce planning spreadsheet Darrell submitted to Russ Dokken, then-Executive Vice President, U.S. Packaged Meats, that included Hahn's name for inclusion in the RIF, includes her (and everyone else in the department's) salary. *See* Ex. F, pp. 78, 79, EEOC Ex. 41; Ex. P. Because there is no evidence by which a fact finder might reasonably conclude that the decision-maker intended to discriminate against Hahn based on her age, she cannot establish the third element of her *prima facie* case as a matter of law, and summary judgment is warranted.

## B. Defendants Had Legitimate, Nondiscriminatory Reasons for Plaintiff's Termination.

To satisfy their burden, Defendants "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Tidwell v. Carter Prods*., 135 F.3d 1422, 1426 (11th Cir. 1998) (citation omitted). If Defendants produce a nondiscriminatory reason for their action, the presumption of discrimination disappears. *Id.* Because Defendants need only produce, not prove, a nondiscriminatory reason, this burden is "exceedingly light." *Perryman v. Johnson Products Co., Inc*., 698 F.2d 1138, 1142 (11th Cir. 1983).

19

Courts have found that eliminating a position to avoid an unnecessary expenditure is a legitimate, nondiscriminatory reason for an employment decision. *See Sims* 704 F.3d at 1334 (budgetary restraints which forced it to eliminate positions a legitimate, nondiscriminatory reason for termination); *Tidwell*, 135 F.3d at 1426 ("Carter proffered its RIF as a legitimate, nondiscriminatory reason for terminating Tidwell, eliminating the presumption of discrimination."); *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995) (RIF based on budgetary constraints was a legitimate, non-discriminatory reason for termination). It is undisputed that Hahn's employment was terminated as part of a RIF in January 2021, which occurred for financial reasons. SMF ¶¶ 12, 19. As part of the January 2021 RIF, teams were required to reduce their expenses by approximately 10%. SMF ¶ 12.

Defendants have also articulated legitimate, nondiscriminatory reasons for including Hahn's position in the January 2021 RIF, namely Hahn's high salary and her location. *See* Section II(B) and III(A)(2); *see England v. United Ins. Co. of Am.*, 97 F. Supp. 2d 1090, 1096 (M.D. Ala. 2000), *aff'd sub nom. England v. United Ins. Co.*, 247 F.3d 249 (11th Cir. 2001) (geography was legitimate, non-discriminatory reason for termination); *Godby v. Marsh USA*, *Inc.*, 346 Fed. Appx. 491, 494 (11th Cir. 2009) (termination of employee whose salary was higher than other facilities' employees doing similar work was consistent with the goals of the RIF); *Margolis*

*v. Pub. Health Tr. of Miami-Dade Cnty.*, 89 F. Supp. 3d 1343, 1352 (S.D. Fla. 2015) (decision to eliminate the position of the highest paid medical director was non-discriminatory). Thus, Defendants have met their "exceedingly light" burden of articulating legitimate, non-discriminatory reasons for Hahn's termination.

> ### C. The EEOC Cannot Establish that Defendants' Legitimate, Nondiscriminatory Reasons Are Pretext for Age Discrimination.

To demonstrate pretext, Plaintiff must show *both* that Defendants' proffered reasons for Hahn's termination are false *and* that discrimination was the real reason for her termination. *See Brooks v. Cnty. Comm'n of Jefferson Cnty.*, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006). Plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that *each* of the employe's proffered nondiscriminatory reasons is pretextual. *See Chapman*, 229 F.3d at 1037.

> #### 1. The EEOC cannot establish that Hahn's salary was a false reason for her termination and that discrimination was the real reason for her termination.

The EEOC cannot produce any evidence, nor does it even allege, that the January 2021 RIF itself was motivated by discriminatory reasons. Rather, it contends that Hahn's selection was discriminatory. Hahn's high salary relative to her coworkers is undisputed. SMF ¶¶ 18, 21; Ex. B, at SMI_4267-68; Ex. D, Smi. Ex. 1, pp. 1-2; Ex. P, p. 1. It is also undisputed that Smithfield determined in late 2020 that it had to cut costs in multiple departments, including Hahn's Fresh Meats Sales department, by approximately 10% each. SMF ¶ 12. The EEOC has failed to "meet

21

head on and rebut [Smithfield's] proffered reason for terminating [Hahn], namely, that [Smithfield's] budget shortfall necessitated terminating some positions to reduce costs." *City of LaFayette*, 504 F. App'x at 871; *see Brooks*, 446 F.3d at 1163.[8]

Furthermore, courts have specifically recognized that a RIF is sometimes an undesirable business necessity.

> Terminating employees who are serving in a satisfactory manner, and who may have been with a particular company for an extended period of time can be extremely difficult, and can lead to hard feelings and a sense of resentment. However, such actions are sometimes required in the business world. The courtroom cannot take the place of the boardroom in determining how, where, when, and why a RIF should occur.

*Bibby v. Drummond Co.*, 818 F. Supp. 325, 330 (N.D. Ala. 1993), *aff'd*, 20 F.3d 1174 (11th Cir. 1994). "The essence of a RIF is that competent employees who in more prosperous times would continue and flourish at a company may nevertheless have to be fired." *Earley,* 907 F.2d at 1083 (citation omitted).

---

[8] To the extent the EEOC contends that Smithfield's efforts to hire employees for available positions during the January 2021 RIF and in the following months is evidence the reasons for Hahn's inclusion in the RIF were pretextual, this argument is unavailing. *See Margolis*, 89 F. Supp. 3d at 1353–54 (stating that "[Defendant]'s business judgment—its decision to restructure the medical directors in the cardiology department and hire new doctors—does not concern this Court. Our real interest lies in whether [Plaintiff] produced sufficient evidence to demonstrate an actual intent on  the part of [Defendants] to discriminate on the basis of age." (internal quotation omitted)).

**2.    The EEOC cannot establish that Hahn's location is a false reason and that discrimination was the real reason for her termination.**

Smithfield decided to use location as one rationale for inclusion in the RIF. SMF ¶ 15; Ex. A, Smi. Ex. 5, SMI_1126. Hahn worked remotely at the time of her termination. SMF ¶ 11.[9] Another remote employee (Chris Buckley) who did not work at a Smithfield corporate office was also included in the January 2021 RIF. Ex. D, p. 271, EEOC Ex. 25, pp. 10, 11.

Left with no actual evidence, Defendants expect that the EEOC will attempt to rely on Hahn's subjective opinion that her termination was unfair. While the EEOC will likely contend that it is unfair that the requirement for Hahn to move to Smithfield, Virginia was "tabled" in late 2019, but then her location was used as a factor for termination, that simply is not illegal. There is absolutely no evidence that the decision to "table" her move was related to her age.[10] That Smithfield later decided to use employees' locations as one of the reasons for inclusion in the RIF is not evidence of age discrimination. If the proffered reasons are ones that might motivate a reasonable employer, Plaintiff must meet those reasons head on and rebut them, and the EEOC cannot succeed by simply quarreling with the wisdom of the

---

9 Hahn admitted, under oath, during her EEOC intake interview that she did not want to relocate to Smithfield, Virginia. Ex. Q, Smi. Ex. 3, EEOC_987.

10 Nor does Hahn allege that the decision to table her relocation was discriminatory: Hahn's EEOC Charge of Discrimination identifies the alleged start and end dates "discrimination took place" as January 29, 2021. SMF ¶ 32; Ex. R.

23

reasons. *See Chapman*, 229 F.3d at 1030 (citing *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1341 (11th Cir. 2000)).

> Moreover, it is the well-settled law of the Eleventh Circuit that:

> Federal courts do not sit as a super-personnel department that reexamine[] an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior.

*Elrod*, 939 F.2d at 1470 (quoting *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988) (citations omitted)); *see also Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1195 (11th Cir. 2024) (an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.") (citation omitted); *Abel v. Dubberly*, 210 F.3d 1334, 1339 n. 5 (11th Cir. 2000). Federal courts "do not ... second-guess the business judgment of employers." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law. We are not in the business of adjudging whether employment decisions are prudent or fair." (internal citation omitted)).

24

**3.** **The fact that Hahn was not told the reasons for her termination (salary and location) during her termination meeting does not prove pretext.**

Defendants also anticipate that the EEOC will claim that Defendants' reasons for terminating Hahn were pretextual because Hahn was read a script during her termination meeting that did not include the exact reasons of her termination.[11] *See* Ex. A, pp. 30-31; Ex. D, pp. 166-67, 290-91. However, Smithfield was under no obligation to explain to Hahn the precise reasons for her termination. *See Mitchell*, 504 F. App'x at 871 ("[Plaintiffs] have cited no binding authority in support of their argument that [defendant] was required to explain why their positions were eliminated instead of others."). As explained in the OWBPA notice, roles within the decisional unit were consolidated to eliminate redundancies and optimize efficiency (i.e., cut costs), and termination decisions were made based on factors such as past performance, skill set, and location. SMF ¶ 20.

## IV. **CONCLUSION**

As there are no genuine disputes as to any material fact, Defendants respectfully request that the Court grant summary judgment in their favor on all of Plaintiff's claims.

---

[11] It is undisputed that the script was read to all employees who were terminated in the January 2021 RIF and that Trapp and Moore, who attended Hahn's termination meeting, did not stray from the script when terminating employees. Ex. D, pp.166-67; Ex. G, pp. 206-09, Smi. Ex. 25.

Respectfully submitted this 15th day of January, 2026.

/s/*Amber M. Rogers*
Amber M. Rogers
Texas Bar No. 24056224
HUNTON ANDREWS KURTH LLP
Fountain Place
1445 Ross Avenue, Suite 3700
Dallas, TX 75202
(214) 979-3000 Telephone
(214) 880-0011 Facsimile
arogers@hunton.com
*Admitted Pro Hac Vice*

Alyce B. Ogunsola
Georgia Bar No. 480048
HUNTON ANDREWS KURTH LLP
Bank of America Plaza, Suite 4100
600 Peachtree Street, NE
Atlanta, GA 30308
(404) 888-4000 Telephone
(404) 888-4190 Facsimile
aogunsola@hunton.com

Eileen C. Henderson
Massachusetts Bar No. 699109
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, MA 02109
(617) 648-2800 Telephone
(617) 433-5022 Facsimile
ehenderson@hunton.com

*Counsel for Defendants*

26

## CERTIFICATION OF COMPLIANCE

Pursuant to Local Rule 7.1D, counsel certifies that this document was prepared using Times New Roman 14-point font.

This 15th day of January, 2026.

*/s/Amber M. Rogers*
Amber M. Rogers
*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 15, 2026, a true and accurate copy of the foregoing document was served on counsel of record for Plaintiff as follows through the Court's ECF Filing system:

Steven A. Wagner
U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
steven.wagner@eeoc.gov

*/s/Amber M. Rogers*
Amber M. Rogers
