IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, v. SMITHFIELD FOODS, INC. and SMITHFIELD FRESH MEATS SALES CORPORATION, Defendants. | CIVIL ACTION NO. 1:24-CV-02158-TRJ-CMS JURY TRIAL DEMAND |

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Equal Employment Opportunity Commission ("EEOC"), and files its Response in Opposition to Defendants Smithfield Foods, Inc., and Smithfield Fresh Meats Sales Corporation's (collectively, "Smithfield") Motion for Summary Judgment ("Motion") pursuant to Rule 56, Federal Rules of Civil Procedure and Local Rule 56.1, showing the Court that there are disputed material facts requiring a jury trial and, therefore, the Motion should be DENIED.

Smithfield violated the Age Discrimination in Employment Act ("ADEA") by discharging Sheryl Hahn ("Hahn") because of her age in January 2021. The evidence of age discrimination in this case requires a jury to decide liability.

1

## I.    STATEMENT OF MATERIAL FACTS

Smithfield discharged Sheryl Hahn in January 2021, when she was 59 years old and tried to replace her with a 30-year-old during a reduction in force in January 2021 ("2021 RIF") in which older workers were targeted. Hahn was told her discharge had nothing to do with anything she did or did not do. But during the EEOC's investigation of Hahn's Charge of Discrimination (the "Charge"), Smithfield said the *sole* reason it fired Hahn was because she *refused* to relocate to Virginia, which is not true, and the decision to discharge her was made in 2019, not 2021. During this lawsuit, Smithfield claimed Hahn was fired in 2021 because she *refused* to relocate *and* because of her salary. Smithfield now claims it fired Hahn because she lived in Georgia, not for refusing to relocate. Smithfield continues to dissemble to hide the truth that it discharged Hahn because of her age.

### A.    2019 and the Relocation Requirement.

Hahn began working for Smithfield in 2010 and worked from Georgia during her entire tenure. Doc 77-1, 10-13. Hahn was employed as a Senior Sales Account Manager at the time of her discharge in 2021. Id. In 2019, Hahn reported to Paul Kennis, Senior Regional Sales Manager, who reported to Scott Trapp, VP of Corporate Industrial Sales. Doc. 77-5, 37-38, 45, 121; Doc. 77-4, 18, 20, 41.

In early 2019, Hahn and other employees were told to relocate to the corporate office in Smithfield, Virginia. On April 22, 2019, Hahn agreed to

2

relocate to Virginia by the end of 2019. EEOC's Statement of Material Facts ("EEOC SMF"), ¶ 1. On or about July 1, 2019, Hahn returned her acceptance of the relocation offer to Human Resources. Doc. 77-7, 48, EEOC Ex. 34. Hahn agreed to relocate because she wanted to keep her job. EEOC SMF, ¶ 1.

In or about October 2019, Hahn reached an agreement with Trapp to live in Georgia, but commute to work in Virginia Monday through Thursday. EEOC SMF, ¶ 2. Hahn chose January 4, 2021, as the date she would start commuting, and Trapp accepted that date. EEOC SMF, ¶ 2.

Later in 2019, in a call with Trapp and Kennis, Hahn was told she no longer had to relocate. EEOC SMF, ¶ 3. This call occurred before January 2, 2020, because her performance evaluation dated that day confirms the tabling of her relocation. Doc. 77-5, 95-96, EEOC Ex. 1. After the relocation expectation was tabled, Hahn was never again asked to relocate to Virginia. EEOC SMF, ¶ 3. While Trapp claims that at some point in 2020 Hahn was again told to relocate to Virginia, he later admitted that the discussion he thought was in 2020, probably occurred in 2019, before the relocation requirement was tabled. EEOC SMF, ¶ 4. Trapp also conceded that he has no record of telling Hahn to move to Virginia in 2020 or 2021. EEOC SMF, ¶ 5. Nevertheless, Hahn unequivocally denies being told to relocate or refusing to do so after January 2020. EEOC SMF, ¶ 6. The EEOC asked Smithfield for each time Hahn refused to relocate and it simply

3

pointed to its document production, which includes no documents showing Hahn refused to relocate after January 2, 2020. Doc. 77-4, EEOC Ex. 24, ROG 10.

Despite tabling the relocation, Smithfield told the EEOC during the investigation of the Charge that "[t]he *sole* reason Ms. Hahn was terminated from her employment was because her job moved to Virginia and she *refused to relocate*." EEOC SMF, ¶ 7 (emphasis added). It added that "although Ms. Hahn's termination was not finalized until January 29, 2021, the decision to terminate Ms. Hahn's employment if she refused to relocate was made . . . no later than June 2019." EEOC SMF, ¶ 8. Smithfield argued that because it decided to discharge Hahn in 2019, the Charge, filed in 2021, was untimely."[1] Doc. 77-4, EEOC Ex. 28, p. 4. Smithfield also made clear that Hahn's discharge was not part of the 2021 RIF, but a separate decision and Hahn was simply added to the group discharged in the 2021 RIF "[b]ecause the termination of Ms. Hahn's employment occurred at the same time as a number of other Smithfield employees, group termination treatment was warranted." EEOC SMF, ¶ 9.

### B.    The 2021 RIF Was Used to Fire the Oldest Employees.

Contrary to its statements to the EEOC that it decided to discharge Hahn in 2019, and that she was simply added to the ongoing 2021 RIF, Smithfield now claims Hahn was discharged in the 2021 RIF because of her salary and location.

---

[1] Smithfield has since abandoned that argument. Doc. 3.

Trapp selected employees from his team for the 2021 RIF and was supposed to discuss them with Robert Darrell, VP of Fresh Pork Sales. EEOC SMF, ¶ 10; Doc. 77-6, 29-30. Trapp had total discretion as to who to select even though he was not trained on the ADEA and does not know what it is. EEOC SMF, ¶¶ 10-11. Smithfield says that Trapp and Darrell were required to cut payroll by 10%. Doc. 79, Def. SMF ¶ 12. Instead, Trapp and Darrell cut payroll by 22.3%, more than twice the required amount. EEOC SMF, ¶ 12.

Trapp and Darrell fired six employees from the fresh sales team and retained 18. Doc. 77-4, Ex. 8, p. 12, EEOC Ex. 24, ROG 8. They fired the two oldest Senior Sales Account Managers: Hahn (59) and Chris Buckley (55).[2] EEOC SMF, ¶ 13. They retained the four youngest: Luke Henry (31), Henry Dalbec, Jr. (30), Al Thomas (49), and Jamie Worthwine (46). EEOC SMF, ¶ 13.

Trapp and Darrell also fired the oldest Sales Representative, Kim Guilford (56), and kept the youngest, Anastasia Valencia (32), Logan Heinrichs (26), and Scott Hoppert (40); fired the oldest Sales Account Manager, Kevin Dierking (60) and kept the youngest, Michael Newell (33) and Quinton Howard (41); and fired the oldest Senior Director, Sales, Ed Tanksley (62), and kept the youngest, Alan Denzer (55) and Henry Dalbec, Sr. (58). EEOC SMF, ¶¶ 14-16. The only

---

[2] Smithfield misstates Hahn's testimony when it says she said she was the oldest of those fired as part of the 2021 RIF. Doc. 77, p. 17. Hahn clarified her testimony stating that she was the oldest *in her group*. Doc. 77-1, 64-65.

exception is they fired the youngest Regional Sales Manager, Brant Clardy (43), and kept the oldest, Suan Carr-Dow ("Dow") (47), David Harnish (51), and Vincent Clougherty (45). Doc. 77-4, EEOC Ex. 8, p. 12, EEOC Ex. 24, ROG 8. But Clardy had performance issues. EEOC SMF, ¶ 17. That is, five of the six employees selected for the 2021 RIF were the oldest in their job category.

### C.    The 2021 RIF Was an Excuse to Fire Hahn Because of Her Age.

Using the 2021 RIF as cover, Trapp planned to fire 59-year-old Hahn and replace her with Henry Dalbec, Jr. ("Dalbec"). Dalbec was 30 years old in January 2021. EEOC SMF, ¶ 18. On January 8, 2021, three weeks before firing Hahn, Trapp sent Dalbec a job offer for a Senior Sales Account Manager position, Hahn's position, reporting to Dow, to whom Hahn reported. EEOC SMF, ¶ 19. Dalbec was also given until July 2021 to move to Virginia as part of his offer. Doc. 77-4, 186, EEOC Ex. 30. At the same time, Trapp was also looking to hire to backfill Dow's position after her promotion earlier in the year. EEOC SMF, ¶ 20. Trapp could have hired Hahn to fill the position, but he did not, nor did he ask her to relocate to fill the position. EEOC SMF, ¶ 20.

On January 15, 2021, Trapp sent Morgan Moore, Director, Compensation & HRIS, a new organizational chart with Dalbec as a Senior Sales Account Manager reporting to Dow in place of Hahn. EEOC SMF, ¶ 21. Smithfield admits that it was the same job Hahn held but located in Virginia. EEOC SMF, ¶ 22. And Trapp

knew Dalbec was much younger than Hahn when he tried replacing her with him:

> Q.   So does that mean Sheryl Hahn's already been – the decision to discharge Sheryl Hahn has already been made as of the date of this email, January 15, 2021?
> A.   That would be correct.
> Q.   And the person who's on her team instead of her is Henry Dalbec, correct?
> A.   That's correct.
> Q.   And how old is Henry Dalbec at this time?
> A.   I don't know.
> . . .
> Q.   Younger that Sheryl Hahn, right?
> A.   Yes.
> Q.   Quite a bit younger than Sheryl Hahn.
> [Objection]
> A.   He would have probably been one of the younger team members in totality.

EEOC SMF, ¶ 23; Doc. No. 77-4, 171-173. Trapp's plan for Dow's team after the 2021 RIF was to have Al Thomas and Dalbec reporting to Dow, and no Hahn. EEOC SMF, ¶ 24.

**D.   Trapp's Tale of How He Chose Hahn Lacks Evidentiary Support.**

Trapp's explanation of how he chose Hahn makes no sense, is not supported by the evidence, and a jury could infer Trapp is not telling the truth. Trapp claims he selected Hahn for the 2021 RIF because "she 1, wouldn't move; and 2, she --- her --- the amount of money she made" and no other reason. Doc. 77-4, 39, 239-240. But he could not remember when he claims Hahn refused to move to Virigina. EEOC SMF, ¶ 25. Trapp says he completed a worksheet with his discharge

recommendations and turned it in to Darrell. Doc. 77-4, 33-34, 39, 57-58. Trapp also says he sat down with Darrell where the "entire workbook was laid out" and discussed his recommendations. Doc. 77-4, 78-81. He claims he typed "CliffsNotes" type notes to the side of Hahn's name with the purported reasons he selected her, location and salary. Id. And made similar notes next to the names of everyone on his team on this alleged worksheet and selected "yes" or "no" for each person. Id. He also claimed he saved the worksheet to his computer and emailed it to Darrell. Doc. 77-4, 57-58. No such worksheet or email was produced in this case. When asked if Hahn had moved to Virginia before the 2021 RIF, whether she still would have been fired, he said he did not know, which means it was not an issue with her salary. EEOC SMF, ¶ 26.

Adding to his tall tale, Trapp says he discussed his selection of Hahn with Kennis, including Kennis allegedly telling Trapp that Hahn did not want to move, but Kennis had not supervised Hahn since February 2020, and he was not consulted on her discharge. EEOC SMF, ¶ 27; Doc. 77-4, 56-57. Trapp also claims he discussed Hahn's selection with Dow, her actual supervisor, but she denies it and says he just told her it was happening. EEOC SMF, ¶ 27; Doc. 77-4, 224. None of Trapp's story about how he selected Hahn or why is supported by any of the evidence, and it is up to the trier of fact to determine if he is being untruthful about the reasons he claims he selected Hahn and why.

### E.    Hahn's Position Was Not Eliminated.

Smithfield claims Hahn's position was eliminated completely. Doc. 77, p. 8. This is misleading and ignores that Trapp tried to replace Hahn with 30-year-old Dalbec in the same position held by Hahn reporting to the same supervisor, even though his plan was foiled when Dalbec declined the job. EEOC SMF, ¶ 21; Doc. 77-4, 176, EEOC Exs. 21-22. Trapp also admitted that Hahn's job was eliminated in Georgia only and it still existed in Virginia. Doc. 77-4, 182-184, 243-244.

### F.    Hahn Was Supposed to be Given Another Chance to Relocate.

While Trapp planned to replace Hahn with Dalbec, on January 13, 2021, Moore and Rachel Johnston, Corporate HR Manager, discussed an offer to Hahn to relocate and Johnston asked Moore to remind her of the details: "no change in comp[ensation], when would we expect her in Smithfield?" Doc. 77-7, 79-83, EEOC Ex. 37, p. 3; Exhibit "A", pp. 43-44. Moore responded, "[Darrell] needs to tell us – no later than June I would say". Doc. 77-7, 79-83, EEOC Ex. 37, p. 4. Moore adds, "we've already played this game with her once." Id. Moore assumed Hahn was given a chance to relocate as other employers were in January 2021, and, if she did not, she would be discharged, not that she was already going to be discharged. EEOC SMF, ¶ 29.

In contrast to Trapp's testimony that he made the Hahn selection with Darrell, that appears to have been news to Darrell because on January 15, 2021, he

9

had a discussion with Human Resources about Hahn being offered the chance to relocate, not be discharged.[3] Doc. 77-6, 39, 42, EEOC Ex. 31. But he told Moore and Johnston that his boss, Jamie Dik, informed him that it was a discharge, not a relocation. EEOC SMF, ¶ 30. Dik claims that information came from Moore. 77-3, 63-64. But Moore denied that it came from her. Doc. 77-7, 87. Darrell could not explain this email, but he does not refute what it says either. Doc. 77-6, 39-41, EEOC Ex. 31. Darrell agrees it appears that Hahn was not originally one of the people to be laid off and was added in late. EEOC SMF, ¶ 31. In fact, Darrell told Johnston, "Morgan and I are planning to handle a handful of these on 1/25 I believe (is that right Morgan??) so I'm guessing we would want to do this the same day. Does that make sense?" EEOC SMF, ¶ 32. Morgan responded, "Agree we should handle it all the same day." Id. This is powerful evidence that Hahn was not actually part of the cost-cutting layoffs.

Further proof that Hahn was not initially supposed to be part of the 2021 RIF is that on January 25, 2021, Moore emailed Dokken the master list of employees for the 2021 RIF. Doc. 77-7, 95-100, EEOC Ex. 38, p. 2. Next to the names of Guilford, Clardy, Buckley, and Dierking, four of the six people laid off, there is a

---

[3] Hahn is on a November 2020 list of people for the 2021 RIF to "increase[e] [the] percentage of Inside Sales people . . . in Smithfield/Kansas City offices." Doc. 77-6, 85-86, EEOC Ex. 41. Darrell conceded that Hahn relocating to Virginia would have the same result. Id. Darrell also said that some of the ideas in this email did not come to fruition. Doc. 77-6, 78-81, 91. This explains why Darrell thought that Hahn was supposed to be asked to relocate, not be fired, in January 2021.

note stating, "same day notification & separation", but for Hahn it states, "Relocate or exit".[4] EEOC SMF, ¶ 33; Doc. 77-7, 95-100, EEOC Ex. 38, p. 2. Moore said Hahn being marked as "relocate or exit" means conversations were happening, that the opportunity to relocate was still on the table and decisions needed to be made, and confirmed this information came from the "business decision makers". EEOC SMF, ¶ 33. The "relocate or exit" plan for Hahn was canceled and she was fired.

### G.    Dalbec Declined Hahn's Job, but Hahn was Fired Anyway.

On January 18, 2021, Dalbec declined the offer to replace Hahn on Dow's sales team. Doc. 77-4, 176, EEOC Ex. 22. While Trapp was trying to replace Hahn with Dalbec and selecting employees for the 2021 RIF, Trapp and Dow were also trying to fill a position on Dow's team left open when she was promoted in 2020. Doc. 77-4, 194. After Dalbec scuttled Trapp's plan, Trapp did not offer it to Hahn but continued interviewing candidates to fill the empty role reporting to Dow. EEOC SMF, ¶ 34, Doc. 77-4, 177, 181, 184. Dow and Trapp interviewed candidates for a lower-level position, but when Trapp asked if they could upgrade the position to Sales Account Manager, Johnston cautioned them not to because of what was happening with Hahn being discharged. EEOC SMF, ¶ 35. Johnston could not explain what this meant. Ex. "A", 57-60. A jury could infer the concern was it suggests Hahn was discharged for unlawful reasons.

---

[4] There is no entry next to Tanksley, but the plan was to keep him until May 2021, to assist with the transition. Doc. 77-4, 163-164, EEOC Ex., 38.

On or about January 28, 2021, Moore and Trapp called Hahn to tell her she was fired and Moore told Hahn that it was nothing she or did not do that caused her to be fired. EEOC SMF, ¶ 36. Trapp claims he followed a script during this call, but he also does not recall telling Hahn that her discharge was related to her salary or her location. Doc. 77-4, 164-169.

Smithfield claims "Hahn admitted, under oath, during her EEOC intake interview that she did not want to relocate to Smithfield, Virginia."[5] Doc. 77, p. 23. This is a distortion of the investigator's testimony about *her* notes from an interview with Hahn and her counsel, and the investigator testified she could not remember who said what, or whether it is what they said or just what she surmised. Doc. 77-17, 38-39. There is no evidence that either Hahn or her counsel said what Smithfield claims she admitted, in what context, or regarding which year, e.g. 2019 v. 2021. Smithfield did not ask Hahn about this document in her deposition, but it appears to relate to a post-discharge offer from Smithfield. After her attorney sent a demand letter, and less than three months after firing her, Smithfield offered to reinstate Hahn. Ex. "B", ¶ 6. Hahn was willing to relocate to keep her job, but after she was fired, she feared if she moved she would be subjected to a hostile environment and again be targeted because of her age and be fired. Ex. "B", ¶¶ 3, 7. Any post-discharge fact decision by Hahn does not affect Smithfield's liability.

---

[5] Notably, Trapp did not want to move to Virginia either. 77-4, 66.

12

## II.   ARGUMENT AND CITATIONS OF AUTHORITY

At summary judgment, "the Judge's function is not to weigh the evidence to determine the truth of the matter, but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "Although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves v. Sanderson Plumb. Prods., Inc., 530 U.S. 133, 151 (2000). A court also has discretion to deny summary judgment where the case would benefit from a full hearing and the better course is to proceed to trial. See Lind v. United Parcel Serv., Inc., 254 F.3d 1281, 1285 (11th Cir. 2001).

### A.   The Summary Judgment Standard.

It is unlawful for an employer "to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). Smithfield advocates using the McDonnell Douglas test to evaluate the Motion. But courts must also consider the "convincing mosaic" test, which Smithfield does not address, along with the McDonnell Douglas test in ruling on summary judgment motions. See Ismael v. Roundtree, 161 F.4th 752, 765 (11th Cir. 2025) (Reversible error to consider only the McDonnell Douglas test.) This is because "[i]f the plaintiff presents enough circumstantial evidence to raise a reasonable inference of intentional discrimination, her claim will survive summary judgment." Tynes v. Fl. Dept. of

13

Juv. Justice, 88 F.4th 939, 947 (11th Cir. 2023) (citation omitted). Under either standard, the Motion should be DENIED.

### B.    The EEOC Can Satisfy Either McDonnell Douglas Test.

Under one version of the McDonnell Douglas test for ADEA claims, "the plaintiff must show that . . . she (1) was a member of a protected group, (2) was qualified to do the job, (3) was discharged and (4) was replaced by someone outside the protected group." Zaben v. Air Products & Chems., Inc., 129 F.3d 1453, 1457 (11th Cir. 1997). Smithfield argues the *prima facie* case for a RIF is the proper test. Doc. 77, p. 10. This version requires "(1) that she was in a protected age group and was adversely affected by an employment decision, (2) that she was qualified for her current position or to assume another position at the time of discharge; and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision." Smith v. J. Smith Lanier & Co., 352 F.3d 1342, 1244 (11th Cir. 2003) (citation omitted). This standard does not require showing Hahn was replaced because that often does not occur in a RIF. Id. The EEOC can meet either standard.

Smithfield does not contest that Hahn was in the protected age group and that she was discharged. Doc. 77, pp. 10-19. Therefore, those elements are not at issue. Smithfield, however, contends the EEOC cannot meet its preferred *prima facie* test because (1) Hahn was not qualified for some *other* job opening with

14

Smithfield and (2) it cannot present evidence by which a fact finder could reasonably conclude that it intended to discriminate because of age.

### (1)    Hahn is Qualified Under Either Test.

Smithfield attempts to cast this case as involving a total job elimination and, therefore, the EEOC is required to show Hahn was qualified for open jobs other than her own. Doc. 77, p. 11. This argument is unavailing because Hahn's job was not eliminated in its entirety. EEOC SMF, ¶ 37. The best evidence of this is that Trapp tried to replace Hahn with Dalbec with the same job title as Hahn and reporting to the same person to whom Hahn had reported. Doc. 77-4, 171-173, EEOC Ex. 21. Smithfield also told the EEOC "[Hahn] was not among those whose jobs were selected for elimination in their entirety; her position only was eliminated in Georgia . . .." Doc. 77-4, EEOC Ex. 28, p. 6. And "Ms. Hahn's Senior Sales Account Manager position was not immediately eliminated following the termination of her employment . . .." Doc. 77-4, EEOC Ex. 29, p. 9

Cases requiring a plaintiff to prove qualification for an open position other than their own, the only cases Smithfield cites, involve jobs eliminated entirely because they became obsolete or were outsourced, or where the jobsite closed. See Earley v. Champion Int'l Corp., 907 F.2d 1077 (11th Cir. 1990) (Job made obsolete by computerized inventory system; challenged failure to transfer to a new job, not the elimination of the position); see also Smith, 352 F.3d 1342 (Plaintiff

did not challenge elimination of position; claimed defendant failed to hire her for another position); see also Mitchell v. Worldwide Underwriters Ins. Co., 967 F.2d 565 (11th Cir. 1992) (Plaintiff's position eliminated when former duties outsourced to a contractor); see also Jameson v. Arrow Co., 75 F.3d 1528 (11th Cir. 1996) (Plaintiff's entire team eliminated after acquisition; challenged only failure to transfer or rehire her); see also Johnson v. United Gov't of Athens-Clarke Cty., 209 F. Supp. 3d 1335 (M.D. Ga. 2016) (New computer system made job obsolete); see also Alexander v. Vesta Ins. Grp., Inc., 147 F. Supp. 2d 1223 (N.D. Ala. 2001) (Elimination of commercial insurance department made job obsolete; plaintiffs challenged failure to transfer, not their discharge); see also Grigsby v. Reynolds Metals Co., 821 F.2d 590 (11th Cir. 1987) (Plaintiff did not challenge the cause of the RIF, jobsite closing, challenged demotion and denied promotion).

The Senior Sales Account Manager position on Dow's sales team (and Dow's sales team itself) continued to exist as evidenced by the attempt to move Dalbec there and the organizational chart sent by Trapp. EEOC SMF, ¶ 19. There was no outsourcing or closing of a facility involved. Therefore, the EEOC need only show that Hahn was qualified for the Senior Sales Account Manager position, which Smithfield does not contest. Because Hahn held largely the same job[6] for

---

[6] Hahn was hired as a Sales Account Manager and later given the title of Senior Sales Account Manager, but effectively did the same job, selling pork on the Fresh Sales team, for her entire tenure with Smithfield. Doc. 79, Def. SMF, ¶¶ 1,4.

16

almost 11 years, she was qualified. See Liebman v. Metro. Life Ins. Co., 808 F.3d 1294, 1299 (11th Cir. 2015) (Can infer qualification based on long tenure in position). It is also undisputed that her supervisors, Kennis and Dow, said Hahn's performance was good. EEOC SMF, ¶ 28. Most telling is that Smithfield did not list performance as a reason she was fired.

Even further evidence that the EEOC need not prove Hahn was qualified for jobs other than her own is that her customers were spread out among other employees, they did not go away. Doc. 77-4, 83-84. Where this happens, there is no need for the EEOC to prove anything other than Hahn was qualified for the position she held when fired. See Williams v. Vitro Servs Corp., 144 F.3d 1438, 1442 (11th Cir. 1998); see also Jett v. AGL Res., Inc., 2006 WL 8431289, at *12 (N.D. Ga. Mar. 29, 2006) (No need to show qualified for other position where parties agree plaintiff's job duties were redistributed to other employees).

Therefore, the EEOC satisfies the "qualified" element of both tests.

> (2)    Hahn Was Discharged Because of her Age and Replaced by a Younger Employee, Satisfying the Final Element.

Trapp intended to substitute Dalbec, who was 30 years old, for Hahn, who was 59. EEOC SMF, ¶¶ 18-19, 21-24. This 29-year age difference is more than sufficient to satisfy the final element of the typical ADEA *prima facie* test because it shows Hahn was replaced, or Trapp tried to replace her, with a person, Dalbec,

17

outside her protected group. See Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1360 (11th Cir. 1999) (Five-year age difference between plaintiff and replacement sufficient); see also Zaben, 129 F.3d at 1457. This is sufficient to move past the *prima facie* stage to the pretext stage, but because Smithfield argues the RIF test applies, the EEOC will address that as well.

The third element in the RIF test can be satisfied where "a plaintiff could present circumstantial statistical evidence regarding age; or evidence that the employer's plan was subterfuge for discrimination." Rowell v. BellSouth Corp., 433 F.3d 794, 798 (11th Cir. 2005). In addition to Trapp's plan to replace Hahn with a substantially younger person, Trapp and Darrell also made 22.3% in payroll cuts when they were only required to cut 10%, thus calling into question any need to fire Hahn because of her salary. They also fired the two oldest Senior Sales Account Managers, the oldest Sales Representative, the oldest Sales Account Manager, and the oldest Senior Director of Sales, which is evidence a jury could decide shows animus based on age. See Keller v. Hyundai Motor Mfg., 513 F. Supp. 3d. 1324, 1335 (M.D. Ala. 2021) (Jury could reasonably find age was but-for cause where older employees three times as likely as younger employees to be included in reorganization). Smithfield's shifting reasons for discharging Hahn also suggest discriminatory motive. See E.E.O.C. v. Nice, Inc., 2021 WL 3707959, *6 (S.D. Fla. Aug. 5, 2021) (Summary judgment denied because evolving reasons

18

from investigation to litigation could lead jury to disbelieve proffered reasons.).

Therefore, there is evidence that Smithfield tried to replace Hahn with a substantially younger person, and sufficient evidence that she was fired because of her age to satisfy either *prima facie* test.

### C.    Proffered Legitimate Non-Discriminatory Reasons are Pretext.

Smithfield's proffered legitimate non-discriminatory reasons are: (1) salary and (2) location. The EEOC can show that not only are the proffered reasons false, but they are also unworthy of credence and pretext for age discrimination.[7]

"The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). Smithfield cites Brooks v. Cnty. Comm'n of Jefferson Cty., Ala., claiming there is a "pretext plus" standard. 446 F.3d 1160, 1163 (11th Cir. 2006). But that is not the law because "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation.". See Reeves, 530 U.S. 133, 147; see also Robinson v. Armstrong World Indus., Inc., 2014 WL 3420449, *10 (M.D. Ga July 10, 2014) (Noting the Supreme Court rejected the so-

---

[7] While Hahn does not cite any ageist comments, "employment discrimination is often accomplished by discreet manipulations and hidden under a veil of self-declared innocence." Rosen v. Thornburgh, 928 F.2d 528, 533 (2nd Cir. 1991).

called "pretext plus" requirement in discrimination cases).

While the Court in Reeves noted that despite establishing a *prima facie* case and pretext, there may still be sufficient evidence that the employment action was not discriminatory, this is not such a case because no other reasons for discharging Hahn have been proffered by Smithfield. See 530 U.S. at 148; see also Scarbary v. Ga. Dept. of Nat. Res., 245 F. Supp. 3d 1328, 1339 (N.D. Ga. 2017) (Denied summary judgment after showing pretext because the record did not conclusively reveal some other non-discriminatory reason.). Even if a jury disbelieves Smithfield's proffered reasons, it may not be persuaded that discrimination was the real reason, but that decision is in the exercise of the jury's discretion, and it must get the case to exercise that discretion. See Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997). Because a jury can infer discrimination where it finds the proffered reasons to not be credible, "once the plaintiff introduces evidence sufficient to permit the factfinder to disbelieve the employer's proffered explanations, summary judgment is not appropriate. . .." Id., at 1530.

(1)    Hahn Was Discharged Because of Her Age, not her Salary.

Smithfield told the EEOC during its investigation of the Charge that Hahn's alleged refusal to relocate was the *sole* reason for her discharge, did not mention her salary, and claimed the decision was made in 2019, well before the cost-cutting decisions of the 2021 RIF. "[A]n employer's failure to articulate clearly and

20

consistently the reason for an employee's discharge may serve as evidence of pretext . . . [especially] when a defendant in litigation offers reasons it did not offer the EEOC." E.E.O.C. v. Outokumpu Stainless Steel USA, LLC, 205 F. Supp. 3d 1287, 1295 (S.D. Ala. 2016) (citation omitted). This inference of pretext is made stronger when the response to the Charge is a "lengthy, finely crafted work that appears to be the product of much time and deliberation" as it was in this case, making it unlikely that some of the true reasons were accidentally omitted. Id.

Smithfield's communications to the EEOC never mentioned Hahn's salary as the reason she was fired and claimed the decision to fire Hahn was made in 2019. "Reasons for discharge introduced after the fact can be used to show pretext." Dickson v. Amoco Perf. Prods., Inc., 910 F. Supp. 629, 637 (N.D. Ga. 1994) (Pretext found where defendant told EEOC one reason for discharge and added salary rankings as additional reason during litigation); see also Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1298–99 (11th Cir. 2006) (Corrective counseling statement and separation notice give one reason for discharge and do not include later proffered reasons); Keene v. Prine, 477 F. App'x 575, 583 (11th Cir. 2012) (abrogated on other grounds) (Proffered reasons for termination never provided to the Georgia DOL or the EEOC.).

Regardless of the amount of Hahn's salary or where it ranked according to her co-workers, according to Smithfield's own recitation of the facts, Darrell and

21

Trapp were only required to cut payroll by 10% to meet the mandated salary goals. Def. SMF, ¶ 12. Hahn's salary is pretext for discrimination because Darrell and Trapp did not need to eliminate Hahn's salary to satisfy the 10% payroll cut mandate because they cut payroll by 22.3%. Doc. 77-7, pp. 373-374. If they did not include Hahn's salary, they still would have cut the payroll by 19%. Id. According to Smithfield's own spreadsheets, Trapp and Darrell's cuts projected a total compensation change of $1,505,941 with Hahn's salary, which means it would be a change of $1,289,019 without her included based on her $216,922 annual compensation, which when divided by the starting total compensation of $6,755,919, results in a savings of 19%, still well over the 10% mandate. Id.

Smithfield also fired the oldest person in all but one job category. This is further evidence Hahn was fired because of her age. See Keller, 513 F. Supp. 3d. at 1335 (Jury could reasonably find age was but-for cause where older employees three times as likely as younger employees to be included in reorganization).

It was unnecessary to fire Hahn to meet the 10% mandate and Smithfield did not include salary as a reason for her discharge until the lawsuit was filed. Trapp and Darrell fired the oldest person in all but one job category. In addition, less than three months after discharging her, Smithfield offered to reinstate Hahn at the same pay, proving her salary was not an issue. Also, the evidence does not support Trapp's claim about how he selected Hahn but does support that Hahn was

22

supposed to be asked to relocate, not be fired. Therefore, there is sufficient evidence for a jury to disbelieve that Smithfield fired Hahn because of her salary.

(2)    Hahn Was Discharged Because of Her Age, not her Location.

Smithfield attempts to recast location as some benign factor in Hahn's discharge. Smithfield's alleged reason for firing Hahn, from the Position Statement through its interrogatory responses and the depositions, up until the filing of the Motion, was that Hahn *refused to relocate*, not that she was simply located in Georgia and not Virginia. In fact, that was Smithfield's interrogatory response: "Hahn's employment was terminated because she ***refused to relocate*** to Smithfield, Virginia, did not apply for other available internal positions, and because of the cost savings that could be achieved by terminating her employment." Doc. 77-4, EEOC Ex. 24, ROG 5 (emphasis added).

Hahn testified unequivocally that she was not asked to move after the relocation requirement was tabled in January 2020. EEOC SMF, ¶ 6. None of the witnesses, including Trapp, could point to any evidence that Hahn refused to relocate after January 2020, which creates at least a question of fact as to whether she refused to relocate. Most telling is that Smithfield does not argue in its brief that Hahn refused to relocate; it just argues that she was in Georgia, not Virginia.

There is also a question whether Trapp could even have "sincerely believed" that Hahn refused to relocate because Hahn testified unequivocally that she was

23

never asked to relocate after 2019. See Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005) (Can demonstrate pretext by disputing defendant's facts and sincere belief those facts existed when it made the decision).

"[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." Reeves, at 147. In cases such as this, "it suffices to say that a plaintiff's *prima facie* case and sufficient evidence to reject the employer's explanation may permit a finding of liability. . .." Id. at 149. If a jury credits Hahn's testimony as true, she did not refuse to move to Virginia, in fact, she agreed to move and then the requirement to move was tabled and she was never asked to move again.

### D.   Convincing Mosaic.

"A 'convincing mosaic' of circumstantial evidence is simply enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action – the ultimate inquiry in a discrimination lawsuit." Tynes, 88 F.4th at 946. There is more than enough in this case:

(1) Smithfield said refusal to relocate was the sole reason then added other reasons.

(2) Smithfield fired the two oldest employees in Hahn's job category and the oldest employee from three of the other four job categories.

(3) Tried to replace Hahn with a 30-year-old.

(4) Cut 22% of payroll when only required to cut 10%.

(5) Smithfield told the EEOC it decided to fire Hahn in 2019, not 2021.

(6) Smithfield added Hahn to the 2021 RIF as an afterthought.

(7) Trapp's story about how he selected Hahn is not supported by the documents he claims should exist or the testimony of Darrell, Kennis, or Dow.

(8) Both HR and Darrell thought Hahn was being asked to relocate, and they discussed adding her to the 2021 RIF only after learning she was to be fired.

(9) Hahn was told it was nothing she did or did not do when she was fired.

(10) Hahn was on a list with a note to "relocate or exit", not as an exit.

(11) Johnston cautioned Trapp about upgrading the new hire position to something that sounded like Hahn's position.

### E.      Smithfield's Other Arguments Are Unavailing.

Smithfield argues because Trapp and Darrell were both over 40, they could not have discriminated based on age. This is contrary to Supreme Court precedent. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998). Similarly, Smithfield's argument that there were other older workers not laid off is of no moment. See Hodges v. Rensselaer Hartford Grad. Ctr., Inc., 2008 WL 793594, *6 (D. Conn. Mar. 20, 2008) (Cannot avoid liability for discriminating against single employee by proving it treated other members of the employee's group favorably.).

### III.    CONCLUSION

For the reasons set forth herein, the Motion should be **DENIED**.

Respectfully submitted, this 17th day of February, 2026.

<u>*s/Steven A. Wagner*</u>
Steven A. Wagner
Georgia Bar No. 000529

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone:   (404) 909-7603
Facsimile:   (404) 562-6905

### CERTIFICATION OF COMPLIANCE

Pursuant to Local Rule 7.1D, counsel certifies that this response was prepared using Times New Roman 14-point font.

This 17th day of February, 2026.

<u>s/Steven A. Wagner</u>
Steven A. Wagner
Georgia Bar No. 000529

### CERTIFICATION OF SERVICE

I hereby certify that on February 17, 2026, a true and correct copy of the foregoing Equal Employment Opportunity Commission's Response in Opposition to Defendants' Motion for Summary Judgment was served on counsel of record for Defendants through the Court's CM/ECF filing system.

26

This 17th day of February, 2026.

s/Steven A. Wagner
Steven A. Wagner
Georgia Bar No. 000529
