IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SMITHFIELD FOODS, INC. and SMITHFIELD FRESH MEATS SALES CORPORATION,<br><br>Defendants. | | CIVIL ACTION NO.<br>1:24-CV-02158-TRJ-CMS<br><br>JURY TRIAL DEMAND |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1 and Rule 56 of the Federal Rules of Civil Procedure, Defendant Smithfield Foods, Inc. (Defendant or Smithfield Foods) and Smithfield Fresh Meats Sales Corporation (Smithfield Fresh Meats Sales) (collectively, Defendants or Smithfield) submit this Reply Brief in support of their Motion for Summary Judgment (Motion).

## I.    ARGUMENT

### A. The EEOC failed to provide any evidence of age discrimination.

The Equal Employment Opportunity Commission's (EEOC) Response in Opposition to Defendants' Motion for Summary Judgment (Dkt. 80) (Response) attempts to distort and muddy uncontroverted facts, questions Defendants' business

1

judgment, bemoans the unfairness of Sheryl Hahn's (Hahn) termination, and misapplies the law. Critically, however, it fails to satisfy the EEOC's burden of proving age discrimination. *See Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1270 (11th Cir. 2014).

First, the EEOC concedes that it must rely on circumstantial evidence only because it has no direct evidence of discrimination. *See* Resp. at 19, n. 7. Second, the record evidence shows no evidence of age discrimination. Further, the EEOC's convincing mosaic approach cannot save its case. A "convincing mosaic" is a "metaphor, not a legal test and not a framework." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023) (internal citations omitted). Ultimately, "the *McDonnell Douglas* framework and the convincing mosaic approach are two paths to the same destination—the ordinary summary judgment standard. One approach is not more forgiving than the other on the final question, which is whether a reasonable jury could infer illegal discrimination." *McCreight v. AuburnBank,* 117 F.4th 1322, 1335 (11th Cir. 2024) (internal citations omitted). The EEOC's conspiracy theories fail to satisfy its ultimate burden of establishing that age discrimination was the "but-for" cause of Hahn's termination. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).

1. <u>Hahn's job was eliminated in its entirety and she was not replaced</u>.

Contrary to the EEOC's claims, it must establish that Hahn was qualified to assume another position with Defendants because her job was entirely eliminated for nondiscriminatory reasons. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082-83 (11th Cir. 1990).[1] The EEOC does not dispute that if Hahn's position had been eliminated in its entirety, it must show that she was qualified for another open position.[2] Nevertheless, the EEOC asserts, despite the evidence, that Hahn's position was not eliminated and she was replaced by Henry Dalbec, Jr. (Dalbec). *See* Resp. at 15-18.

First, the uncontroverted evidence shows that Hahn's position was eliminated. *See* Mot. at 8-9. Moreover, none of the cases cited by the EEOC support job elimination *only* if "they became obsolete or were outsourced, or where the jobsite closed." Resp. at 15. Rather, caselaw supports logic. *See Daniels v. Westinghouse Elec. Corp.*, 772 F. Supp. 1278, 1281 (N.D. Ga. 1990) ("Replace" conveys one person being fired so another may take his place); *Gortemoller v. Int'l Furniture Mktg., Inc.*, No. CV 09-00399-CB-C, 2010 WL 11506989, at *4, *6 (S.D. Ala. Nov.

---

[1] Notably, *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1442 (11th Cir. 1998), does not overrule the standard set forth in *Earley*, 907 F.2d at 1083.

[2] The EEOC cites *Jett v. AGL Res., Inc.*, No. 1:03-CV-2953-CAP, 2006 WL 8431289, at *12 (N.D. Ga. Mar. 29, 2006), but conveniently ignores that only if a position is eliminated for discriminatory reasons may a plaintiff succeed by showing that they were qualified for their current position only.

29, 2010) (finding no replacement when termination resulted in a *decrease* in employees and duties are reassigned to an existing employee).

Second, the EEOC cites no cases to support its argument that Hahn's position was not eliminated because *another* Senior Sales Account Manager position existed on the sales team and Susan Dow's (Dow) sales team itself continued to exist. *See* Resp. at 16. Similarly, the EEOC's argument that Hahn's position was not eliminated because her former customers were serviced by remaining employees is devoid of legal support. *See, e.g., Blackburn v. Am. Tel. & Tel. Sys.,* 925 F. Supp. 762, 768 (N.D. Ga. 1995) (finding *prima facie* case not established and stating, "Whenever a job is eliminated, in connection with a reduction in force or otherwise, at least some [of] the duties of the eliminated job will need to be undertaken by other employees."); *Jones v. RS & H, Inc.,* 316 F. Supp. 3d 1330, 1343 n. 13 (2018) (finding that in a RIF terminated employees' duties would usually be absorbed by the remaining (and sometimes younger) employees).

Third, Hahn was never replaced. *See* Mot. at 11-12. The EEOC ignores irrefutable evidence that Scott Trapp (Trapp) *never* tried to replace Hahn with Dalbec. Immediately preceding the RIF, there were three positions on the Fresh Sales team reporting to Dow—Hahn's position, Al Thomas' position, and Dow's former position (vacant due to Dow's promotion) and two positions after the RIF. Mot. at 8; *see* Doc. 77-4, Exs. 20, 21. Dow had been recently promoted from Senior

Sales Account Manager to Regional Sales Manager, replacing Paul Kennis (Kennis). Doc 77-4, 171. Thus, in January 2021, Trapp was "looking to hire to backfill Dow's position after her promotion earlier in the year." Resp. at 6. The EEOC, however, ignores Trapp's unequivocal testimony: "Q. When Susan Dow got promoted up, did you try to backfill her position? A. So that would have been moving Henry Dalbec into the Virgina office. So it was part of that." Doc. 77-4, 175. Also, the EEOC's own questioning reveals that it knew that "as of January 18, there's still an empty role or two empty roles reporting to Susan Dow and her team…." Doc. 77-4, 177. Simply put, Dalbec was offered *Dow's* former Senior Sales Account Manager position, not Hahn's. Dalbec rejected the offer (to replace Dow) on January 18, 2021—more than 10 days before Hahn was terminated. Resp. at 11. Moreover, Dalbec ultimately took an **outside** sales position in California, for which the EEOC does not deny that Hahn was unqualified. *See* Mot. at 15-16; EEOC RSMF, ¶ 1.

Because the EEOC knows Hahn was not replaced, it artfully states that Trapp merely "*tried* to replace Hahn with Dalbec" and "*intended* to substitute Dalbec … for Hahn…." Resp. at 15, 17 (emphasis added). The EEOC has no legal support for its claim that an employer "intending" to replace an employee, but never actually replacing them, satisfies the replacement element of the *prima facie* case. Because the EEOC does not and cannot establish that Dalbec or anyone else actually replaced Hahn, its attempt to satisfy its preferred version of the *McDonnell Douglas* test fails.

    2.  <u>The EEOC failed to present evidence that Hahn was qualified to assume another position at the time of her discharge</u>.

Having failed to show that Hahn was replaced by someone outside her protected class or her position was eliminated entirely, the EEOC must show that she was qualified to assume another position at the time of her discharge. *See Smith v. J. Smith Lanier & Co*., 352 F.3d 1342, 1344 (11th Cir. 2003). The EEOC admits Hahn was told she could apply for alternative open positions at Smithfield and she never did. EEOC RSMF, ¶¶ 28, 29. Despite the EEOC's claims, no precedent required Defendants to transfer Hahn or give her a job for which she never applied. *See J. Smith Lanier & Co*., 352 F.3d at 1344-45. Accordingly, the EEOC fails to establish a *prima facie* case and summary judgement is warranted.

    3.  <u>There is no evidence by which a fact finder might reasonably conclude that Smithfield intended to discriminate based on Hahn's age in selecting her for the RIF</u>.

The EEOC improperly relies, in part, on "statistical" evidence provided by its attorney to satisfy its *prima facie* burden. *See* Resp. at 18. While statistics may be used to satisfy the third prong, importantly, the Eleventh Circuit has held that "to be accepted, statistical calculations must come from a witness, not a party's lawyer." *Mitchell v. LaFayette*, 504 F. App'x 867, 870 (11th Cir. 2013) (citing *Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1315 n. 16 (11th Cir. 1998) (noting that "courts do not expect juries to use calculators or find a mathematician among its members")). Moreover, unless such statistics are proffered through a "named expert

to establish a proper analytical foundation" they are "virtually meaningless" and thus, "lack probative value." *Mitchell*, 504 F. App'x at 870 (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004) (finding that statistical evidence presented by the plaintiff does not have any probative value in establishing a *prima facie* case of disparate treatment)); *Pace v. S. Ry. Sys.,* 701 F.2d 1383, 1388-89 (11th Cir. 1983); *see also Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 952 (11th Cir. 1991) (statistics without an analytic foundation are virtually meaningless). Here, Plaintiff failed to name an expert during the discovery period. Therefore, the EEOC's last-ditch attempt now to proffer statistical evidence lacks any probative value and cannot be used to establish the third prong.

Furthermore, because of the lack of required expert testimony, the EEOC failed to establish any statistical significance to the data. *See, e.g., Benson v. Tocco, Inc.*, 113 F.3d 1203, 1209 (11th Cir. 1997). The EEOC cannot simply rely on its superficial presentation of the raw RIF numbers without properly accounting for nondiscriminatory explanations. *See Watkins*, 153 F.3d at 1316; *Doan v. Seagate Tech., Inc.*, 82 F.3d 974, 979 (10th Cir. 1996) (finding plaintiff's data that "a greater percentage of older workers were selected for the RIF while a greater percentage of younger people were hired afterwards" to be "flawed because it failed to compare similarly situated individuals and failed to eliminate nondiscriminatory reasons for

7

the numerical disparities"). Additionally, all of the EEOC's other efforts to satisfy

the third prong must also fail. *See* Section B *infra*.

**B. The EEOC failed to establish that Defendants' legitimate, nondiscriminatory reasons—Hahn's salary and location—are pretext for age discrimination.**

The EEOC does not dispute that Defendants established a legitimate,

nondiscriminatory reason for Hahn's termination. *See* Resp. at 19. It is insufficient

for the EEOC to merely call into question Defendants' proffered legitimate,

nondiscriminatory reasons for the termination. *See Flowers v. Troup Cnty., Ga., Sch.

Dist.*, 803 F.3d 1327, 1339 (11th Cir. 2015) (citing *Reeves v. Sanderson Plumbing

Prods., Inc.*, 530 U.S. 133, 148 (2000)). The EEOC must meet Defendants' reasons

head on and rebut them, and may not simply quarrel with their wisdom.[3] *See Brooks

v. Cnty. Comm'n of Jefferson Cnty.,* 446 F.3d 1160, 1163 (11th Cir. 2006).

    1. .Defendants have not provided shifting reasons for discharging Hahn.

The EEOC's claim that Defendants have provided shifting reasons for Hahn's

---

[3] Even if the reasons for terminating Hahn were unfair, they were not pretextual. *See Menefee v. Sanders Lead Co., Inc.*, 786 F. App'x 963, 965 (11th Cir. 2019) (finding no discrimination when employee's job was spared because of nepotism). What matters is whether unlawful discrimination led to the employment decision, not its unfairness. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266–67 (11th Cir. 2010) (finding nepotism, personal friendship, the plaintiff's being a perceived threat to his superior, a mistaken evaluation, whistleblowing, a superior officer's desire to shift blame to a hapless subordinate as lawful reasons for termination).

termination is false. Evidence that an employer had **additional** reasons for terminating an employee does not prove pretext. *Tidwell v. Carter Prods*., 135 F.3d 1422, 1428 (11th Cir. 1998) ("At most, the jury could find that performance was an additional, but undisclosed, reason for the decision; the existence of a possible additional non-discriminatory basis for [plaintiff's] termination does not, however prove pretext."). If an employer offers different reasons for terminating an employee, those reasons must be inconsistent in order to constitute evidence of pretext. *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1458–59 (11th Cir. 1997). The Eleventh Circuit has explicitly declined to find inconsistences/pretext even when a defendant stated that seniority played *no role* in a termination and that *only* performance was considered and later stating employee was discharged for having the least seniority. *Id.* at F.3d 1458.

Courts in this circuit have routinely declined to find pretext when employers provide additional non-contradictory reasons for an employee's termination as litigation and discovery progresses. *See Dennis v. Spondivits Enters.,* LLC, No. 1:07-CV-2274-HTW-RGV, 2009 WL 10701899, at *15–16 (N.D. Ga. Aug. 20, 2009) (finding no evidence of pretext although employer initially stated that plaintiff was *not* terminated because of a Mystery Dining Report and then later clarified that she was not terminated *solely* for the report); *Moore v. Jefferson Cnty. Dep't of Human Resources*, 277 F. App'x 857, 860 (11th Cir. 2008) (finding no pretext when reasons

9

cited in EEOC position statement differed slightly from deposition testimony when the reasons were not inconsistent); *Holloway v. TelaGen, LLC,* No. 2:20-CV-943-KFP, 2022 WL 9495466, at *10 (M.D. Ala. Oct. 14, 2022) (finding no pretext unless the new reasons relied on in litigation plainly contradict the reasons at the time of the decision) (internal citations omitted); *Moore v. Perficient, Inc*., No. 1:20-CV-2124-SEG, 2023 WL 11967783, at *7 (N.D. Ga. Mar. 31, 2023) (finding no conflict in different reasons given at termination, to the EEOC, and in discovery because the reasons were closely related); *Hamer v. City of Atlanta, Georgia*, No. 115CV00636ELRRGV, 2016 WL 10591434, at *14 (N.D. Ga. Dec. 27, 2016) (finding no pretext when employer cited failure to move to re-assigned office initially and then cited incompetence and insubordination and later negligence as reasons for termination because each of the stated reasons related to plaintiff's failure to move and to perform the assigned duties).

Just as in the above cases, Defendants merely asserted Hahn's salary as an additional reason for her termination as further investigation occurred. Importantly, it is undisputed that Hahn's salary was remarkably high, approximately $30,000 higher than the next highest-paid Senior Sales Account Manager on her team. Mot. at 2. At the time her employment was terminated, Hahn's salary was even higher than her current and former direct supervisors. EEOC RSMF ¶ 21. Further, the EEOC has cited no legal support for the argument that termination for refusal to

relocate to Smithfield, Virginia is plainly inconsistent with termination for an employee's location or salary. Moreover, relocation and location are two sides of the same coin. There is no genuine question about Trapp's sincere belief. The EEOC admits that Hahn refused to relocate in 2019. Resp. at 23; EEOC RSMF ¶¶ 10, 11. Because Hahn refused to relocate in 2019, at the time of RIF, she was located in Georgia instead of Virgina.

2. <u>Statements made in Defendants' position statement do not establish pretext</u>.

Moreover, the EEOC's reliance on certain statements made by Defendants in its EEOC position statement is meritless. This Court has found that even if a defendant's EEOC response was inconsistent with the statements made by the defendant's decisionmakers during litigation, any inconsistency would be immaterial given that the preparer did not consult with or seek approval from any decisionmaker when preparing the EEOC response. *See Hertel v. Remington Lodging & Hosp., LLC*, No. 1:18-CV-0749-SDG-JFK, 2020 WL 13664133, at *19–20 (N.D. Ga. Jan. 27, 2020); *Saye v. Vanity Fair Brands, LP*, 2009 WL 10668455, at *12 (N.D. Ga. Oct. 26, 2009) (rejecting plaintiff's "shifting articulation" argument when the EEOC position statement prepared by a non-decisionmaker was inconsistent with statements made by decisionmaker) (citation omitted); *see also Equal Emp. Opportunity Comm'n v. Outokumpu Stainless USA, LLC*, 205 F. Supp. 3d 1287, 1295–96 (S.D. Ala. 2016) (finding inference of pretext strengthened only

11

when "the author of the response is, as here, one of the decision-makers, who could not easily fail to be aware of the reasons for the employment decision.").

Here, Morgan Moore (Moore), a nondecision-maker, testified that she was the source of the statement that the "sole reason" Hahn was terminated was because her job moved to Virginia and she refused to relocate. Doc. 77-9, 12. Moore further testified that she did not speak with the decisionmakers (Trapp or Bob Darrell (Darrell)) before providing that information for the position statement. *Id.* at 13. Further, Moore admitted that she should not have used the words "sole reason." *Id.* at 12. Thus, while Defendants initially stated that the "sole reason" for Hahn's termination was her refusal to relocate, as discovery progressed, it became evident that her salary was also a factor. These reasons are not contradictory or inconsistent, and the EEOC cannot establish pretext on this basis.

### 3. Witnesses' imperfect memories do not prove pretext.

A witness' inability to specifically remember the facts surrounding an employee's termination is insufficient to establish pretext. *Maddox v. Grimmer Realty*, No. 1:09-CV-02212-JHE, 2015 WL 6951918, at *19 n.20 (N.D. Ala. Nov. 10, 2015). Moreover an individual's failure to remember every detail is not enough to call into question said individual's ability to remember any factual detail. *Woods v. Delta Air Lines, Inc.*, No. 1:12-CV-00559-SCJ, 2014 WL 12516255, at *3 (N.D. Ga. Mar. 12, 2014). "To begin with, both everyday experience and precedent

12

recognize the reality that memories are dimmed by the passage of time." *McLemore v. Interstate Motor Freight Sys., Inc*., No. 82-HM-5432-NE, 1984 WL 48947, at *10 (N.D. Ala. Jan. 9, 1984). Further, "testimony at a deposition is not a memory test." *Pliteq, Inc. v. Mostafa*, 775 F. Supp. 3d 1231, 1248 (S.D. Fla. 2025).

The EEOC's "investigation" lasted almost two years, and then they did not file a lawsuit for another year. This delay, undisputedly caused by the EEOC, naturally resulted in memory lapses. Now the EEOC wants to blame witnesses, who are no longer employees of the company, because they cannot recall every specific detail of a termination decision from over four years ago. The EEOC attempts to cite to the limitations of Trapp's memory as evidence of pretext without any consideration for the effects of the passage of time for events that occurred during a companywide RIF that impacted his entire team, not just Hahn, and which occurred during an unprecedented global pandemic. *See* Resp. at 7-8. The EEOC seems to forget that Hahn herself struggled to remember details of her own employment during that time period, such as whether she received incentive compensation, whether she used a badge to enter the Smithfield office, her title when Smithfield hired her, how long she was a sales account manager, whether her pay changed when she was promoted, whether Trapp spoke during the termination meeting, her starting salary at her current job, whether she was only looking for jobs in Atlanta, how many people were on her inside sales team, whether anyone told her that if she did not

13

relocate she would be terminated, whether she was offered severance if she did not relocate, and whether she received training on reporting discrimination. Doc. 77-1, 11, 17, 19, 36, 38, 46, 48-50. Most glaringly when asked why she had not intended to move in 2020, Hahn failed to recall her husband's brain surgery which she used as her reasoning at the time. *Id*. at 45.

> 4. Trapp's allegedly missing documents cannot be used to prove pretext.

The EEOC attempts to create an inappropriate inference in its favor based on the absence of an alleged worksheet created by Trapp detailing his recommendations for the RIF and an email from Trapp to Darrell sending the spreadsheet should fail. *See* Resp. at 8. This argument is legally unsound because courts can only draw an adverse inference when there is spoliation. *See Pope v. Wal-Mart Stores E., LP,* No. 4:13-CV-00009-HLM, 2013 WL 12086325, at *4 (N.D. Ga. Nov. 12, 2013) (finding that proof of spoliation raised a rebuttable presumption against the spoliator); *Keaton v. Cobb Cnty.*, 545 F. Supp. 2d 1275, 1307–08 (N.D. Ga. 2008) (no negative inference based on the destruction of documents in the absence of evidence of bad faith).

First, the EEOC never filed a motion regarding spoliation, and its Response cannot be used as such. Second, the parties have already litigated Defendants' alleged spoliation. After months of investigation and review of witness affidavits, this Court concluded that Defendants did not spoliate the alleged document. Third,

14

the EEOC provided no evidence that the alleged worksheet said anything discriminatory. Indeed, by its own claims (Resp. at 8), the worksheet only included a dropdown and Trapp's "cliff's notes" on the rationale for Hahn's termination—her location and salary. Those words in no way even arguably reference Hahn's age. Thus, it would be improper for a negative inference to be made to establish pretext.

     5. <u>The EEOC cannot rely on Defendants' confidential settlement offer to prove pretext</u>.

Finally, the EEOC improperly cites to confidential settlement communications between Defendants and Hahn in direct contravention of the Federal Rules of Evidence (F.R.E.). *See* Resp. at 12, 22; F.R.E. 408; *see also Solorio v. Am. Airlines, Inc.*, No. 00-3780-CIV, 2002 WL 485284, at *8 (S.D. Fla. Feb. 28, 2002) (finding that consent decree could not establish pretext). Specifically, the EEOC cites Defendants' reinstatement offer to attempt to establish pretext. Resp. at 12, 22.

Accordingly, all of the above-described attempts by the EEOC to establish pretext and/or a "convincing mosaic" must fail.

## II.   <u>CONCLUSION</u>

As set forth in the Motion and herein, as there are no genuine issues of material fact, Defendants respectfully request that this Court grant Defendants' Motion in its entirety.

Respectfully submitted this 6th day of March, 2026.

/s/*Amber M. Rogers*
Amber M. Rogers
Texas Bar No. 24056224
HUNTON ANDREWS KURTH LLP
Fountain Place
1445 Ross Avenue, Suite 3700
Dallas, TX 75202
(214) 979-3000 Telephone
(214) 880-0011 Facsimile
arogers@hunton.com
*Admitted Pro Hac Vice*

Alyce B. Ogunsola
Georgia Bar No. 480048
HUNTON ANDREWS KURTH LLP
Bank of America Plaza, Suite 4100
600 Peachtree Street, NE
Atlanta, GA 30308
(404) 888-4000 Telephone
(404) 888-4190 Facsimile
aogunsola@hunton.com

Eileen C. Henderson
Massachusetts Bar No. 699109
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, MA 02109
(617) 648-2800 Telephone
(617) 433-5022 Facsimile
ehenderson@hunton.com
*Admitted Pro Hac Vice*

*Counsel for Defendants*

16

## CERTIFICATION OF COMPLIANCE

Pursuant to Local Rule 7.1D, counsel certifies that this document was prepared using Times New Roman 14-point font.

This 6th day of March, 2026.

/s/ Amber M. Rogers
Amber M. Rogers
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2026, a true and accurate copy of the foregoing document was served on counsel of record for Plaintiff as follows through the Court's ECF Filing system:

Steven A. Wagner
U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
steven.wagner@eeoc.gov

/s/Amber M. Rogers
Amber M. Rogers