IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SMITHFIELD FOODS, INC. and SMITHFIELD FRESH MEATS SALES CORPORATION,<br><br>Defendants. | CIVIL ACTION NO.<br>1:24-CV-02158-TRJ-CMS<br><br>JURY TRIAL DEMAND |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION**

COMES NOW Plaintiff Equal Employment Opportunity Commission ("EEOC"), and files its Response to Defendants Smithfield Foods, Inc., and Smithfield Fresh Meats Sales Corporation's ("Smithfield") objections ("Objections") to the Report and Recommendation ("R&R") showing the Court that the Objections should be OVERRULED and the case should proceed to trial.

Smithfield violated the Age Discrimination in Employment Act ("ADEA") by discharging Sheryl Hahn ("Hahn") because of her age. Smithfield discharged Hahn when she was 59 years old and tried to replace her with a 30-year-old under cover of a reduction in force in January 2021 ("RIF") in which older workers were

targeted. Hahn was told her discharge had nothing to do with anything she did or did not do. But during the EEOC's investigation of Hahn's Charge of Discrimination, Smithfield said the *sole* reason it fired Hahn was she *refused* to relocate to Virginia, which is not true, and the discharge decision was made in 2019, not 2021. During this lawsuit, Smithfield claimed it made the decision to fire Hahn as part of a RIF in 2021 because she *refused* to relocate *and* because of her salary. At summary judgment, Smithfield claimed it fired Hahn because she lived in Georgia, not for refusing to relocate. This case requires a jury to decide liability.

### A. Smithfield Does Not Challenge the Convincing Mosaic Finding.

Smithfield's objections focus exclusively on the McDonnell Douglas test, which the EEOC is not required to satisfy because it "presents enough circumstantial evidence to raise a reasonable inference of intentional discrimination, [so the] claim will survive summary judgment." Tynes v. Fl. Dept. of Juv. Justice, 88 F.4th 939, 947 (11th Cir. 2023) (citation omitted). The Court held that the evidence established a convincing mosaic, to which Smithfield did not object. Doc. 85, pp. 20-21, 35 n. 17. This un-objected to finding is the end of the inquiry unless the District Court finds clear error because the "convincing mosaic approach is—in its entirety—the summary judgment standard." McCreight v. AuburnBank, 117 F.4th 1322, 1335 (11th Cir. 2024); see also Fed. R. Civ. P. 72(b).

### B. Objection 1: Hahn's Position Was Not Eliminated Entirely.

Smithfield claims the Court should have found that Hahn's job was eliminated entirely so she was required to apply for open positions to satisfy the "qualified" component of the McDonnell Douglas *prima facie* case. Doc. 88, pp. 3-5. The "qualified" step of the McDonnell Douglas test, however, asks whether Hahn "was qualified for her current position or to assume another position at the time of discharge . . .." Smith v. J. Smith Lanier & Co., 352 F.3d 1342, 1344 (11th Cir. 2003) (citation omitted). Smithfield does not challenge the finding that Hahn was qualified for her current position, so she is "qualified".

It is only in cases where a job is eliminated entirely where the *prima facie* test includes qualification for another open position, which are jobs that became obsolete or are outsourced, or where the entire jobsite closed. See Earley v. Champion Int'l Corp., 907 F.2d 1077 (11th Cir. 1990) (Job made obsolete by computerized system; challenged failure to transfer to new job, not elimination of the position); see also Smith, 352 F.3d 1342 (Did not challenge elimination of position; claimed defendant failed to hire her for another position); see also Mitchell v. Worldwide Under. Ins. Co., 967 F.2d 565 (11th Cir. 1992) (Position eliminated when duties outsourced to a contractor); see also Jameson v. Arrow Co., 75 F.3d 1528 (11th Cir. 1996) (Plaintiff's entire team eliminated after acquisition; challenged only failure to transfer or rehire her); see also Johnson v. United Gov't

of Athens-Clarke Cty., 209 F. Supp. 3d 1335 (M.D. Ga. 2016) (New computer system made job obsolete); see also Felder v. Bradford Health Servs., 493 F. App'x 17 (11th Cir. 2012) (Plaintiff's job was created specifically for her and did not exist elsewhere in company)[1]; see also Crisman v. Fl. Atl. Univ. Bd. of Trust., 659 F. App'x 572 (11th Cir. 2016) (Position eliminated where service performed was no longer going to be provided). Hahn's Senior Sales Account Manager job, selling pork products on Susan Carr-Dow's ("Carr") sales team, still existed after her termination as evidenced by the attempt to transfer Dalbec to the same team with the same job title selling the same pork products. Doc. No. 77-4, 171-173.

Further evidence that Hahn's job was not eliminated entirely in 2021 is that Smithfield claimed that the decision to discharge Hahn was made in 2019 for refusing to relocate to Virginia. EEOC SMF, ¶ 8. Yet Hahn kept selling pork products reporting to Paul Kennis after the relocation was tabled, showing the job still existed after the alleged 2019 decision to discharge Hahn. Doc. 77-5, 39, 69. Smithfield did not object to the Court's finding that it claimed the decision to fire Hahn was made in 2019. Doc. 88. If the decision was made in 2019, the proffered reasons for firing Hahn, cutting costs in 2021 and refusal to relocate, are false.

Additional evidence that Hahn's job was not eliminated entirely is that after Hahn was discharged in January 2021, her customers were spread out among other

[1] The fact that the job was created for plaintiff is from defendant's brief. See Felder v. Bradford Health Servs., 2009 WL 4998928 (N.D. Ala. 2009).

employees, they did not go away. Doc. 77-4, 83-84. Where his happens, there is no need for the EEOC to prove anything other than Hahn was qualified for the position she held when fired. See Williams v. Vitro Servs Corp., 144 F.3d 1438, 1442 (11th Cir. 1998); see also Jett v. AGL Res., Inc., 2006 WL 8431289, at *12 (N.D. Ga. Mar. 29, 2006) (Pannell, J.) (No need to show qualified for another position where parties agree job duties were redistributed to other employees).

Smithfield faults the Court for considering its position statement as evidence Hahn's job was not eliminated, but its finding is not based solely on the position statement. Doc. 85, 22-23. It is also based on Trapp testifying that Hahn's position was eliminated only in Georgia, not eliminated entirely. Doc.77-4, 242-44. This testimony is consistent with Trapp trying to replace Hahn with 30-year-old Dalbec in the same position held by Hahn on the same sales team reporting to the same supervisor. EEOC SMF, ¶ 21; Doc. 77-4, 176, 248, EEOC Exs. 21-22. Where Hahn appeared on the organizational chart before January 2021 is where Dalbec would appear after Hahn was fired and he was transferred. Doc. 77-4, Exs. 20, 21.

> Q. So does that mean Sheryl Hahn's already been – the decision to discharge Sheryl Hahn has already been made as of the date of this email, January 15, 2021?
> A. That would be correct.
> Q. And the person who's on her team instead of her is Henry Dalbec, correct?
> A. That's correct.

EEOC SMF, ¶ 23; Doc. No. 77-4, 172. Trapp's plan for Dow's team after the 2021

RIF was to have Al Thomas and Dalbec reporting to Dow, and no Hahn. EEOC SMF, ¶ 24. Before Hahn's discharge, Hahn and Thomas reported to Dow and the plan after her discharge was for Dalbec and Thomas to report to Dow. Id. This is a one for one swap no matter how Smithfield tries to frame it. The Senior Sales Account Manager position on Dow's sales team (and Dow's sales team itself) continued to exist as evidenced by the attempt to move Dalbec there and the organizational chart sent by Trapp. EEOC SMF, ¶ 19; Doc. 77-4, Ex. 21. There was no outsourcing or closing of a facility involved. Therefore, the EEOC need only show that Hahn was qualified for the Senior Sales Account Manager position, which Smithfield does not contest.[2]

### C. Objection 2: The Court Did Not Consider Statistical Evidence.

The Court found sufficient evidence for a jury to conclude that Smithfield intended to discriminate because of age in deciding to terminate Hahn. Doc. 85, pp. 24-26. The first reason cited is that the two oldest Senior Sales Account Managers, including Hahn, were terminated, while the four youngest were retained. Id.; EEOC SMF, ¶ 13. The Court declined to rely on the ages of those selected for discharge from other job categories, claiming it is statistical evidence.

It is not statistical evidence; it is circumstantial evidence probative of intent. The Court properly considered the undisputed fact that Trapp and Darrell fired the

[2] Following Smithfield's logic makes it nearly impossible to satisfy the "qualified" element in most RIF cases where there are no open positions. That is not the law.

two oldest Senior Sales Account Managers and kept the four youngest as probative circumstantial evidence of discrimination for the jury to consider. See Damon v. Fleming Super. of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999) ("[A] pattern of firing and demoting so many older workers and replacing them with younger workers, by the relevant decision-maker during the same time period, [is] probative circumstantial evidence of age discrimination."); see also Lewis v. City of Union Cty., Ga., 934 F.3d 1169, 1185 (11th Cir. 2019) (One type of evidence that can establish convincing mosaic is "systematically better treatment of similarly situated employees . . .."); see also Carter v. DecisionOne Corp., 122 F.3d 997, 1003 (11th Cir. 1997) (Evidence of replacing old employees with young supported verdict).

Statistical evidence requiring an expert under F.R.E. 702, as noted by the case cited by Smithfield, involves complicated mathematical calculations outside the general knowledge of jury. See Mitchell v. City of LaFayette, 504 F. App'x. 867, 870 (11th Cir. 2013). In Mitchell, the plaintiff presented a chi-square test used to predict outcomes suggesting discrimination. See Mitchell v. City of Lafayette, 4:10-cv-00118-HLM, Doc. No. 78, p. 48 (N.D. Ga. Feb. 28, 2012). Here the Court simply noted the undisputed evidence that Trapp and Darrell fired the two oldest in Hahn's job category and retained the four youngest. See, e.g., Zuniga v. Boeing Co., 133 F. App'x 570, 581 (10th Cir. 2005) ("Juries are able to make basic inferences from simple statistical information, making an expert unnecessary.")

### D. Objection 3: Court Did Not Hold Smithfield Was Required to Offer Hahn a Job.

Smithfield claims the Court erred by concluding that Smithfield was required to offer Hahn another position.[3] Doc. 88, pp. 7-9. The Court did not do that. The Court found that after Dalbec rejected the relocation offer, Smithfield did not offer or make Hahn aware of the opportunity to relocate as an alternative to terminating her employment was one of several pieces of evidence that showed pretext. Doc. 85, pp. 24-26. The Court also held the fact that Smithfield tried to find a job for a young employee but not for the older employee could be given weight by the jury. Id.

Smithfield continues to try to play a shell game with the jobs on Carr's sales team. Carr had three positions reporting to her, which prior to the RIF, were staffed by Hahn and Al Thomas with one open position. Doc. 88, pp. 7-9. Smithfield claims that Dalbec was to fill the open position[4], not Hahn's position. Id. But the organizational chart clearly shows that the effect of the plan to fire Hahn and transfer Dalbec would result in Dalbec and Thomas reporting to Carr instead of Hahn and Thomas. Doc. 77-4, Ex. 21. Smithfield pretends these were two different

---

[3] Smithfield's argument that Hahn knew how to apply for Carr's former position makes no sense. Doc. 88, p. 8. Hahn would not apply for a position on Carr's sales team while she held a position on that team and unaware she would be fired.

[4] The opening was for a Sales Representative position, not a Senior Sales Account Manager position. Doc. 77-12, Def's Ex. 2.

jobs when they are the same because Dalbec's job title was Senior Sales Account Manager, the same title as Hahn. Id. It is also disingenuous to say, "there was an internal discussion about upgrading the position and relocating Dalbec to Virginia to fill this position". Doc. 88, p. 7. Trapp testified that his plan was to fire Hahn and transfer the 30-year-old Dalbec onto Hahn's old team. EEOC SMF, ¶ 23; Doc. No. 77-4, 171-173. However Smithfield tries to spin this, a jury can find that Trapp was trying to replace Hahn with a younger person. That his plan failed does not mean a jury cannot consider his intent. See Collier v. Budd Co., 66 F.3d 886, 890 (7th Cir. 1995)("If Collier could prove that Budd fired him, intending (but failing) to replace him with a younger employee, we do not see how this action raises any less suspicion of an impermissible motive than if, when Budd fired Collier, it intended to replace him with a younger person and then succeeded in doing so. . . . Budd's actions, if unexplained, allow the inference that the motivation for Collier's termination was to oust an older employee and hire someone younger.")

### E. Objection 4: Statements Made During the EEOC's Investigation Were Properly Considered to Show Pretext.

Smithfield claims the Court erred by concluding that statements in Smithfield's position statement can be used to establish pretext by considering Smithfield's clarification that the reason for Hahn's termination was her location instead of her refusal to relocate because Moore did not consult Darrell or Trapp

before providing this information. Doc. 88, pp. 9-12. Smithfield ignores the fact that Moore did not sign the position statement. Doc. 77-7, Ex. 28. The position statement was signed by Eileen Henderson who is counsel in this case and who represented, *inter alia*, Trapp and Darrell during their depositions. Doc. 77-4, 7, 237-238, Ex. 28; Doc. 77-6, 5. Presumably, counsel fully investigated this matter before submitting a lengthy, detailed position statement to the EEOC, and there is no evidence that the position statement was based solely on Moore's input. See E.E.O.C. v. Outokumpu Stainless USA, LLC, 205 F. Supp. 3d 1287, 1295 (S.D. Ala. 2016) (citation omitted) ("[A]n employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext . . . [especially] when a defendant in litigation offers reasons it did not offer the EEOC." The inference of pretext is stronger when the response is a "lengthy, finely crafted work that appears to be the product of much time and deliberation" as it was here, making it unlikely that the true reasons were accidentally omitted.)

The position statement is not the only time Smithfield claimed it fired Hahn for *refusing* to relocate. Smithfield continued to claim one reason it discharged Hahn was her *refusal* to relocate, not her location, in its original and supplemental interrogatory responses verified by Moore. Doc. 77-7, Ex. 24, Rog. 5 ("Hahn's employment was terminated because she refused to relocate. . .."), Ex. 25, Rog. 5 (same). And Trapp provided information for these responses. 77-7, Ex. 24, Rog. 2.

Also, Smithfield's Answer states that "Hahn was included in the reduction in force due to her refusal to relocate to Smithfield, Virgina." Doc. 3, ¶ 30.

The Court points out where the position statement is inconsistent with deposition testimony and evidence and highlights why they show pretext while acknowledging Moore's testimony that she had not spoken with Trapp or Darrell before providing the "sole reason" language for the position statement. Doc. 85, p. 17. But a jury can decide whether Moore is credible, especially considering the extensive evidence of her involvement with both the relocation and the RIF.

Moore was deeply involved in both the 2019 relocation discussions and the 2021 reduction in force so to say Moore did not know what happened when providing information for the position statement is misleading. Moore knew Hahn had agreed to return to Virginia in 2019, that relocation had been tabled, and that after it was tabled, she had no knowledge of anyone asking her to relocate again nor did Hahn tell her she would not relocate after it was tabled. Doc. 77-7, 23-25, 48-49, 55, 67-68, 81, 96. When Hahn was fired, Moore told Hahn that it was nothing she did or did not do that caused her to be fired. EEOC SMF, ¶ 36; Doc. 77-1, 28. Dik testified that Moore is the person who told her that Hahn was a discharge, not a relocation. Doc. 77-3, 62-64. Moore and Rachel Johnston, Corporate HR Manager, discussed an offer to Hahn to relocate and Johnston asked Moore to remind her of the details: "no change in comp[ensation], when would we

expect her in Smithfield?" Doc. 77-7, 79-83, EEOC Ex. 37, p. 3; Exhibit "A", pp. 43-44. Moore responded, "[Darrell] needs to tell us – no later than June I would say". Doc. 77-7, 79-83, EEOC Ex. 37, p. 4. Moore assumed Hahn was given a chance to relocate as other employers were, and, if she did not, she would be discharged, not that she was already going to be discharged. EEOC SMF, ¶ 29. Moore testified that she was involved in the RIF and saw documents in which Trapp allegedly listed Hahn as a discharge with the justification for her selection[5]. Doc. 77-7, 27-29, 77, 114. According to Smithfield, despite this knowledge, Moore told counsel to tell the EEOC that the decision to fire Hahn was made in 2019 for *refusing* to relocate.

Smithfield claims that inconsistent statements must be internally inconsistent to show pretext and that there is no such inconsistency. Doc. 88, p. 12. There is. Smithfield claimed in the position statement that the decision to discharge Hahn was made in 2019, which is wholly inconsistent with (1) the decision was made in late 2020 or early 2021 and (2) as part of a reduction in force that necessitated her discharge when the RIF had not even been conceived yet. It is also inconsistent with Darrell's testimony that Hahn was not originally one of the people to be laid off as part of the RIF and was added in late. EEOC SMF, ¶ 31. In fact, Darrell told Johnston, "Morgan [Moore] and I are planning to handle a handful of these on 1/25

[5] No such document was produced in this case.

I believe (is that right Morgan??) so I'm guessing we would want to do this the same day. Does that make sense?" EEOC SMF, ¶ 32. Moore responded, "Agree we should handle it all the same day." Id. This is powerful evidence that Hahn was not actually part of the cost-cutting layoffs. Hahn was listed as "relocate or release" and someone made the call to just fire her instead, but Smithfield fails to explain or reconcile this fact.[6] See E.E.O.C. v. Nice, Inc., 2021 WL 3707959, *6 (S.D. Fla. Aug. 5, 2021) (Summary judgment denied because evolving reasons from investigation to litigation could lead jury to disbelieve proffered reasons.).

Smithfield also argues that a reason is not pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." Doc. 85, pp. 9-10. This is the same pretext plus argument Smithfield made previously, which is not the law because "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." Reeves v. Sanderson Plumb. Prods., Inc., 530 U.S. 133, 147 (2000).

**F. Objection 5: Court Did Not Substitute its Business Judgment.**

Smithfield claims the Court acted as a super-personnel department and questioned its decision to fire Hahn instead of someone else. Doc. 88, pp. 12-15. Neither the EEOC nor the Court contends that Trapp should have fired someone other than Hahn. Rather, the Court found based on the undisputed facts that

[6] Smithfield does not address the confusion about whether Hahn was a discharge or a relocate, or object to the Court finding this as evidence of pretext, so it is waived.

Smithfield's contention that Trapp *had* to fire her to satisfy the 10% payroll cut mandate is demonstrably false and Smithfield makes no showing that cutting payroll by 22.3% is the same as cutting it by 10%. The logical conclusion from the undisputed facts is that Trapp was not required to fire Hahn to meet the mandate, from which a jury can infer a discriminatory motive. See Reeves, 530 U.S. at 147 (Jury may "infer from the falsity of [an] explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt.") (quotation omitted) (citation omitted).

**G. Other Reasons to Deny Summary Judgment.**

There is other evidence that the Court did not cite that further supports denying summary judgment. Trapp's explanation of how he chose Hahn makes no sense, is not supported by the evidence, and a jury could infer that Trapp is not telling the truth. Trapp says he completed a worksheet with his discharge recommendations and turned it in to Darrell. Doc. 77-4, 33-34, 39, 57-58. Trapp also says he sat down with Darrell where the "entire workbook was laid out" and discussed his recommendations. Doc. 77-4, 78-81. He claims he typed "CliffsNotes" type notes to the side of Hahn's name with the purported reasons he selected her. Id. And made similar notes next to the names of everyone on his team

on this alleged worksheet and selected "yes" or "no" for each person. Id. He also claimed he saved the worksheet to his computer and emailed it to Darrell. Doc. 77-4, 57-58. No such documents were produced in this case, which could allow a jury to infer that Trapp made up this story and the reasons for firing Hahn after the fact.

Trapp also claims he discussed his selection of Hahn with Kennis, including Kennis allegedly telling Trapp that Hahn did not want to move, but Kennis had not supervised Hahn since February 2020, and he was not consulted on her discharge. EEOC SMF, ¶ 27; Doc. 77-4, 56-57. Trapp also claims he discussed Hahn's selection with Dow, her actual supervisor, but she denies it and says he just told her it was happening. EEOC SMF, ¶ 27; Doc. 77-4, 224. None of Trapp's story about how he selected Hahn or why is supported by any of the evidence, and it is up to the trier of fact to determine if he is being untruthful and why. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993) ("[F]actfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination.").

## CONCLUSION

For the reasons set forth herein, the Objections should be **OVERRULED** and the case should proceed to trial before a jury.

Respectfully submitted, this 27th day of August, 2026.

*s/Steven A. Wagner*
Steven A. Wagner
Georgia Bar No. 000529

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone: (404) 909-7603
Facsimile: (404) 562-6905

## CERTIFICATION OF COMPLIANCE

Pursuant to Local Rule 7.1D, counsel certifies that this response was prepared using Times New Roman 14-point font.

This 27th day of August, 2026.

*s/Steven A. Wagner*
Steven A. Wagner

## CERTIFICATION OF SERVICE

I hereby certify that on August 27, 2026, a true and correct copy of the foregoing Plaintiff's Response to Defendants' Objections to the Report and Recommendation was served on counsel of record for Defendants through the Court's CM/ECF filing system.

This 27th day of August, 2026.

*s/Steven A. Wagner*
Steven A. Wagner